JANSKY and wife, Appellants, vs. CITY OF TWO RIVERS and others, Respondents.

*February 15—March 15, 1938.*

For the appellants there was a brief by *Nash & Nash* of Manitowoc and *H. S. Humke* of Sheboygan, and oral argument by *Mr. Humke*.

*F. W. Dicke,* city attorney, for the respondent city of Two Rivers.

For the respondents Lester O. Lonzo, Mildred Lonzo, Raymond S. Schneider, and Esther K. Schneider there was a brief by *Healy & Joyce* of Manitowoc, and oral argument by *Kenneth C. Healy.*

FRITZ, J.  By a deed dated May 15, 1924, the plaintiffs became the owners of land described therein as—

"Lots Nos. Seven (7) and Eight (8) in Block No. Seven (7) of the City of Two Rivers, laid out upon the East fraction of the Northeast Quarter (NE ¼) of Section No. One (1) in Township No. Nineteen (19) North of Range Twenty-four (24) East."

The original plat of the city of Two Rivers was surveyed in June, 1835, and duly recorded in the office of the register of deeds.  That plat, as appears from the portion thereof herewith reproduced by solid lines (on a reduced scale) shows that when plaintiffs' lots 7 and 8 in block 7 were originally platted, the shore line of Lake Michigan cut diagonally across said lots in a northeasterly and southwesterly direction, so that at the time of the platting thereof they constituted a tract one hundred twenty feet wide in an east and west direction with a western boundary almost one hundred fifty feet long, and an eastern boundary approximately ninety feet long.  That plat further shows lot 1 and adjacent lots in block 1, which were owned by Albert A. Pilon, deceased; also a tract on the east side of plaintiffs' lot 8 in block 7, which is bounded by dash lines, and was conveyed to the defendants Lonzo and wife in 1934; and also shows the westerly part of a tract extending to the east and north of the Lonzos' land, which is owned by the defendants Schneider. The plat further shows that Emmet street, as surveyed, intersected at a right angle the north line of Sixteenth street, which, if it had been then extended across Emmet street,

would have intersected the shore line in 1835 slightly to the west and south of the point at which the latter line intersected the east line of Emmet street, which was also the west line of lot 7 in block 7; and that because of the diagonal manner in which that shore line extended in a southwesterly direction across Emmet street somewhat more than the southeasterly half of the square which otherwise would have constituted the intersection of Emmet and Sixteenth streets was cut off, and there was no extension of Sixteenth street to the east of the east line of Emmet street.

By the clear preponderance of the evidence, and without any material conflict therein, the following facts are also established: Since 1835 variations in the level of Lake Michigan have resulted in changes in the location of the water line to such an extent that when this action was commenced in 1936 it was about four hundred twenty-five feet to the southeast of where it was when the original plat of Two Rivers was surveyed in 1835. Although the evidence as to the precise location of that line at some intervals during that period is indefinite, it is undisputed that in the spring of 1926 the line of the water, by reason of an eighty-feet retrocession thereof since 1835, was about one hundred seventy feet south of the northern boundary of plaintiffs' lots at the east line thereof, and that thereafter the water gradually continued receding toward the southeast so that the present water line is about four hundred twenty-five feet southeast of the water line shown on the original plat of 1835, and extends for about a mile on either side of the plaintiffs' lots in a substantially straight line approximately parallel to that former line. There has never been any legal replatting, dedication, or condemnation proceeding to extend Sixteenth street east of its intersection with Emmet street as shown on the original plat; and neither of those streets was ever surveyed, graded, or surfaced for use as a street to the east or south of that intersection. On the contrary, in about 1916 the city erected a stone sea wall, one and one-half feet thick and twenty-five feet long, extending about in line with the east line of Emmet street, in a slightly southwesterly direction across Sixteenth street from its north to its south curb line, if extended. The street grade on the west side of the wall was built up level with the top thereof, but on its east side there was an abrupt drop of three or four feet, so that a traveler attempting to go east beyond the intersection would have to cross the wall or go around it. A foot west

of the sea wall the city erected a sign with the words "Danger" and "Stop" on its west side. That sign was there when the plaintiffs bought their lots in 1924, and it remained in its original location until the city, in 1935, moved it one hundred twenty feet to the east of the intersection. In about 1930 the city also erected a barricade about twenty feet east of the sea wall and extending across about eighteen feet of the space between the curb lines of Sixteenth street, if extended east of Emmet street. That barricade remained there until the defendants Lonzo began to build a house on their land in 1935.

In about 1927 the city, after obtaining permission from the plaintiffs, ran a storm sewer through the sea wall to discharge surface water at the intersection onto the beach and into the lake. That sewer was buried two and one-half to four feet up to a point four or five feet east of the wall, where its end was exposed. Upon sand filling in that end in 1928, the city extended the sewer one hundred twenty feet eastward without requesting further permission from the plaintiffs. In making that extension the city excavated considerable sand, which began to blow over plaintiffs' land. Upon their complaining about that condition, the city, in order to keep the sand from blowing, spread clay, in 1932, over an area of one hundred feet east of Emmet street and south of plaintiffs' house; and in 1934, spread cinders over that area and twenty feet further to the east. The city never extended the curbing or made any other improvements east of the intersection of Emmet and Sixteenth streets. If the latter had been extended east of Emmet street it would have been but a dead-end street, ending at Lake Michigan without connecting with any other street.

The surface between the lines of Sixteenth street, if extended east of Emmet street, was almost impassable except for foot travel because it was sandy and humpy, with small

sandbanks or dunes and a hollow or gully, and some rapid-growth water willows and beach grass. The sand banks drifted about, and there was no defined roadway. At times during rough weather, between 1925 and 1930, water covered the area east of Emmet street, and even came up to a retaining wall of chunks of broken sidewalk concrete placed by the plaintiffs, after they purchased lots 7 and 8 in 1924, to protect a garage, which they intended to build, against damage by the lake water. When the beach was hard, a vehicle could be driven on it along the water line, and the owners of land along the beach permitted people to walk there unless they did damage, but such travel was not confined to any particular line. For fifteen or seventeen years before the plaintiffs purchased lots 7 and 8 there was a wooden fence on three sides thereof, with the south fence on about the north line of Sixteenth street, if extended. Water undermined the fence at times, and it was removed at about the time plaintiffs purchased the lots. Thereafter they first did some filling to raise the grade on the east side of their lots, and erected the retaining wall of broken concrete, and then, in 1926, they built their house and garage on the lots, and planted a row of trees running east and west at about one hundred forty-two feet south of their north boundary. Upon the lake receding further, they moved most of those trees, in 1930, to a line twenty-two feet south of the first line.

About a year and a half prior to the commencement of this action, the defendants Lonzo began building a house on their land east of plaintiffs' lot 8, and hauled their building materials over the cindered area east of Emmet street along the line of Sixteenth street, if extended. Thereupon the plaintiffs erected a fence across that portion of that area, and upon their refusal to remove it when ordered by the city, the latter removed it. The plaintiffs also objected to the dig-

ging of a ditch for Lonzos' sanitary sewer along the line of
Sixteenth street, if extended, and, upon the latter claiming
the right to do so because it was on their property, the plain-
tiffs began this action in May, 1936.

Upon the trial, as well as on this appeal, the principal ulti-
mate and controlling questions are: (1) In what proportions
and by what division lines of coterminous owners of land
abutting on the original shore line is the new shore line and
the reliction, as the result of the retrocession of the water
between those shore lines, to be apportioned to each abutting
proprietor, including the city of Two Rivers by reason of its
rights at the original shore line along Emmet and Sixteenth
streets, as platted in 1835; and (2) has there been such ad-
verse and continuous use and travel over the area east of the
intersection of Sixteenth and Emmet streets as to establish a
highway by public user, or has there been adverse possession
thereof under color of title by the defendants Lonzo and
their predecessors in title for more than ten years prior to
the commencement of this action.

The trial court, in connection with finding that the plain-
tiffs acquired title by a warranty deed dated May 15, 1924,
to lots numbered 7 and 8 in "Block No. Seven (7) of the
City of Two Rivers," etc., further stated in its findings—

"The southern boundary of said lots being the northern
boundary line of 16th Street produced eastward from Em-
met Street to the range line between Ranges 24 and 25 East,
in said Township."

And the court also found that for many years before
plaintiffs so acquired title to those lots, and for over twenty
years before commencing this action, "that portion of 16th
Street located between the east line of Emmet Street and the
aforementioned Range line . . . had been used by the public
as a public highway, and that by reason of such use of such
highway by the public" the plaintiffs as owners of those lots

"never at any time acquired any riparian rights south of said 16th Street to the shore of Lake Michigan, and consequently are not entitled to any accretions as claimed in their complaint." Therefore the court concluded that plaintiffs are not entitled to have title to the accretions quieted in them.

As those findings are contrary to the clear preponderance and great weight of the evidence, in view of the facts established thereby, as stated above, neither the court's findings nor its conclusions thereon can be sustained. The description in the deed conveying their land to the plaintiffs reads:

"Lots Nos. Seven (7) and Eight (8) in Block No. Seven (7) of the City of Two Rivers, laid out upon the East fraction of the Northeast Quarter (NE ¼) of Section No. One (1) in Township No. Nineteen (19) North of Range Twenty-four (24) East."

Nothing therein stated defines or constitutes, expressly or by implication, the northern line of Sixteenth street produced eastward from Emmet street as the southern boundary of lots 7 and 8, as the trial court found. On the contrary, at the time of that deed the plat of the city of Two Rivers, surveyed in June, 1835, and on record in the office of the register of deeds since shortly thereafter, showed lots 7 and 8 extending southward to the water line of Lake Michigan. Consequently, by virtue of their deed, describing lots which, as platted, were bounded by Lake Michigan, the plaintiffs became riparian owners, and as such owners are entitled to all land extending to the natural shore line as it was in 1835, and as it changed from time to time thereafter by reason of accretions formed upon or against that land, or by reason of the uncovering of portions of the adjoining bed of the lake by the gradual retrocession of the water therefrom. *Boorman v. Sunnuchs,* 42 Wis. 233, 242; *Diedrich v. N. W. U. Ry. Co.* 42 Wis. 248; *Roberts v. Rust,* 104 Wis. 619, 621, 80 N. W. 914; *Doemel v. Jantz,* 180 Wis. 225, 193 N. W. 393.

Likewise, the evidence did not establish, as the defendants contend, that the fence, which was on lots 7 and 8 before the plaintiffs purchased them, defined or was intended to define the south boundary line, or to evidence a dedication of the land south thereof for a public street extending east of Emmet street, within the lines of Sixteenth street; or that that fence remained thereon for such length of time, before it was washed away by the waters of the lake, as to warrant a presumption that there was any such dedication or abandonment of the land south thereof. And likewise, the court's findings and conclusions that the area east of Emmet street, between the lines of Sixteenth street, if extended, had been used by the public for twenty years or more prior to the commencement of this action as a public highway, and that by reason of such use the plaintiffs, as owners of lots 7 and 8, never acquired any riparian rights and accretions thereto, are clearly unwarranted in view of the almost undisputed proof in respect to such obstructions to public travel as the stone wall, barricade, danger sign, and storm sewer, which were constructed and maintained at or immediately east of the east line of Emmet street; and in respect to the impassable condition of the surface of that area, because of sandbanks or dunes with a hollow or gully, and loose and drifting sand until the city spread clay and cinders over it in 1932 and 1934, respectively.

The court found and concluded, in relation to the defendants Lonzo, that they and their predecessors have had open, notorious, and adverse possession, under color of title, for over ten years prior to the commencement of this action, of a tract sixty feet wide along the east side of the section line (which is the east line of plaintiffs' lot 8) from a point one hundred fifty feet south of Seventeenth street to the present water line; that by the Lonzos' offer and the acceptance thereof by the city of Two Rivers, on the trial, the west thirty feet of the portion of that tract, which lies south of

the north line of Sixteenth street, extended eastward, was granted to the city; and that the Lonzos are entitled to have title quieted in them to the balance of that sixty-feet-wide tract along the east side of the section line to the present water line. In relation to the defendants Schneider, the court found and concluded that they own and are entitled to have their title quieted to a tract bounded on the west by the east line of Lonzos' land, as adjudged by the court, and extending south from Seventeenth street to the present shore line. Likewise, in relation to the defendants, who are the heirs and the representatives of the estate of Albert A. Pilon, the court found and concluded that they and their predecessors in title have had adverse possession of and were entitled to that portion of the reliction which extends westward from the tract adjudged to belong to the Lonzos to a line projected in a southeasterly direction,—in extension of the southwesterly line of lot 1 in block 1 on the original plat of Two Rivers,—from the point where the latter line intersected the original shore line, as shown on that plat; and that by a tender made by those defendants, and the acceptance thereof by the city of Two Rivers on the trial, the latter was entitled to the east twenty-six feet of that tract extending from the south line of Sixteenth street, extended, to the present water line. And in relation to the city of Two Rivers, the court, in connection with erroneously finding, as stated above, that Sixteenth street had been extended eastward sixty feet from Emmet street by adverse user for twenty years, found and concluded that from Sixteenth street, as so extended, the defendants Lonzo and Pilon had effectively granted tracts, which totaled thirty feet in width, along the section line (at the east side of plaintiffs' lot 8) to the city for a roadway to the new shore line; and that the city was entitled to have that roadway by an extension of Sixteenth street eastward from Emmet street to the section line and thence southward to the present shore line adjudged to be a public highway,

and to have the plaintiffs adjudged estopped from making any claim to premises which the court found and concluded belonged to the city or the individual defendants.

Those findings in relation to the possession and rights of the defendants are also contrary to the clear preponderance and great weight of the evidence and therefore cannot be sustained. Likewise the court's conclusions of law in respect to riparian rights, by reason of the ownership or interest of those defendants in land bounded by the original shore line, to land uncovered between that line and the present shore by the gradual retrocession of the lake water, cannot be sustained, for reasons stated hereinafter, excepting as to such portions of the uncovered land as are between division lines drawn at right angles from the present shore line to the points where the division lines of coterminous owners of land in which the city had an interest, intersected the original shore line. To that uncovered land there is applicable the rule approved in *Hathaway v. Milwaukee*, 132 Wis. 249, 251, 111 N. W. 570, 112 N. W. 455, in which the court said:

"In dividing the accretion and the new shore the court evidently followed the rule of apportioning to each abutting proprietor such proportion of the new shore line as his ownership of the original shore line bore to the whole line on which the accretion abuts, and dividing the area to be apportioned by connecting the points where division lines of coterminous owners intersect the original shore line and the corresponding points on the new shore line by straight lines. This process of apportionment is well recognized as a proper one to follow unless it results in such inequalities as to make it inequitable. *Northern P. L. Co. v. Bigelow*, 84 Wis. 157, 54 N. W. 496; *Thomas v. A., S. & I. R. L. R. Co.* 122 Wis. 519, 100 N. W. 993; *Batchelder v. Keniston*, 51 N. H. 496."

Nothing is said in that statement as to the direction in which the new division lines are to be drawn, either in relation to each other or to the division lines of coterminous

owners of the upland, in apportioning the accretion or reliction. But an examination of the copy of the plat in the *Hathaway Case,* as printed on page 252 of 132 Wis., discloses that the division lines of the accretion which the court approved were not extensions in a straight line of the division lines of the coterminous owners of the upland. On the contrary, the new division lines were evidently drawn in accordance with the rule that "the side lines of the upland have no influence in deciding the direction of the exterior side lines of the flats" (*Piper v. Richardson,* 9 Metc. (Mass.) 155, 158; *Delord v. New Orleans,* 11 La. Ann. 699; *Swarzwald v. Cooley,* 220 Cal. 438, 31 Pac. (2d) 381, 383; *Crook v. Seaford* (1871), L. R. 6 Ch. 551) ; and furthermore those lines appear to be virtually at right angles to the straight line (dotted) which, as drawn, approximates the general course of the present shore line. Thus, there was applied, substantially, the rule that, in apportioning an accretion or reliction, the new division lines must be drawn in a straight line, at a right angle to the present shore line, from the points at which the division lines of coterminous owners intersected the original shore line. See *Porter v. Sullivan,* 7 Gray (Mass.), 441, 443; *Sparhawk v. Bullard,* 1 Metc. (Mass.) 95, 106; *Gray v. Deluce,* 5 Cush. (Mass.) 9, 12; *Wonson v. Wonson,* 14 Allen (Mass.), 71; *Emerson v. Taylor,* 9 Greenl. (Me.) 42; *Batchelder v. Keniston, supra; Aborn v. Smith,* 12 R. I. 370; *Manchester v. Point St. Iron Works,* 13 R. I. 355. That rule was recognized in *Northern Pine L. Co. v. Bigelow,* 84 Wis. 157, 164, 54 N. W. 496, in discussing the apportionment of riparian rights in shallow water adjacent to the shore line. See also *Thomas v. A., S. & I. R. L. R. Co.* 122 Wis. 519, 524, 100 N. W. 993. In *Swarzwald v. Cooley, supra; Burke v. Commonwealth,* 283 Mass. 63, 186 N. E. 277, it was held that the new division lines should be drawn "perpendicular" to the original shore line. That dif-

ference in applying the rule is of no consequence however in the case at bar, because the present and the original shore lines are substantially parallel and straight for a mile on each side of the premises in controversy, so that a division line drawn at a right angle to either line will be also at that angle to the other.

It follows that the reliction in dispute herein must be apportioned, as the plaintiffs contend, by straight division lines drawn at a right angle to the present shore line from the points at which the division lines of coterminous owners intersected the original shore line. Under an apportionment made in that manner, the plaintiffs are entitled to a tract, the division lines of which will be approximately as indicated by the dash lines "A" and "B" on the copy (Exhibit 2) of the original plat printed in connection with this opinion; and they are entitled to judgment quieting their title to a tract so apportioned. The reliction immediately to the west of that tract along the shore line, as shown on the original plat, at the intersection of Emmet and Sixteenth streets, and along the latter street west of that intersection, up to a straight line drawn at a right angle to the present shore line from the point at which the south line of Sixteenth street west of Emmet street intersected the original shore line, must be apportioned to the city of Two Rivers by reason of riparian rights attaching in favor of a municipality to accretions or reliction along a public highway. *Pewaukee v. Savoy*, 103 Wis. 271, 278, 79 N. W. 436. And by reason of the city's motion to review, the city is entitled to have judgment to that effect, and also quieting its title to that portion of the reliction. The other defendants are respectively entitled to so much of the reliction as is adjacent to their respective holdings of the upland between lines drawn at a right angle to the present shore line from the point at which the original shore line was intersected by boundary lines of their respec-

tive tracts of the upland; and to the tracts so apportioned to them those defendants are entitled to have the judgment quiet title in them.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with the opinion.