MILLER, Plaintiff-Appellant, v. CITY OF WAUWATOSA, Defendant-Respondent.

Supreme Court

*No. 76–410. Argued January 29, 1979.—Decided February 27, 1979.*
(Also reported in 275 N.W.2d 876.)

For the appellant there were briefs by *John T. Clark, Joseph C. Niebler* and *Miller & Niebler, S. C.,* of Milwaukee, and oral argument by *Joseph C. Niebler.*

For the respondent there was a brief and oral argument by *Harold D. Gehrke,* city attorney, of Wauwatosa.

Brief of the attorney general as amicus curiae was filed by *Bronson C. La Follette,* attorney general, and *Charles A. Bleck,* assistant attorney general.

CONNOR T. HANSEN, J.   The street involved in this litigation is a portion of North Menomonee River Parkway in the City of Wauwatosa.  The appellant owns residential real estate which abuts the western edge of the parkway and is located in the Sheraton Lawns subdivision.  At the time the plat was recorded in 1926, a 40-foot right-of-way was dedicated for roadway purposes.

In 1956, the subdivision was annexed to the city and the city improved and relocated the roadway by constructing a 24 foot concrete roadway within the 40 foot easement. The western edge of this roadway was 10 feet east of the appellant's property line.  Apparently over the years the appellant used and maintained this 10 foot strip as a part of his lawn.

In 1966, the city acquired an additional 40 feet of land from Milwaukee County. This 40-foot strip of land is located east of and adjacent to the 40-foot roadway easement dedicated in the Sheraton Lawns subdivision. By resolution, in August, 1970, the city proposed to increase the width of the traveled portion of the road from 24 feet to 30 feet and move the paved or traveled portion of the road 15 feet to the east. Thus the western edge of the paved road would be 25 feet from the east property line of the appellant's property instead of 10 feet as it was before the road was moved to the east. Apparently the appellant now maintains this 25-foot strip of land as part of his lawn.

The appellant objected to the improvement proposed in the August, 1970 resolution, contending that it constituted a "discontinuance" of the unused portion of the roadway and the city was therefore required to follow the procedure set forth in sec. 66.296(2), Stats. The city denied that the change in the location of the roadway, as declared by the resolution, constituted a discontinuance under the statute and proceeded with its plans to move the traveled portion of the road to the east.

In January, 1971, the appellant commenced an action to enjoin the proposed construction. The case was submitted on stipulated facts and the trial court granted a permanent injunction in July, 1971, which enjoined the city from proceeding with the construction. The court concluded that because the western 15 feet of the previously existing roadway would be eliminated for vehicular traffic, the proposed improvement resulted in a discontinuance of that 15 foot portion of the roadway and therefore required compliance with sec. 66.296(2), Stats. Sec. (c) thereof provides:

"(c) No discontinuance shall be ordered if a written objection to the proposed discontinuance is filed with the city or village clerk by any of the owners abutting on the portion sought to be discontinued. . . ."

Therefore, even if the city complied with the procedure set out in sec. 66.296(2), appellant's objection would effectively block the construction. The city did not appeal this decision, but rather sought relief through the legislature. Sec. 66.296 was subsequently amended in Chapter 46 of the Laws of 1975, by the addition of the following subsection:

"(2m) **For the purpose of this section,** the narrowing, widening, extending or other alteration of any road, street, lane or alley does not constitute a discontinuance of any part of the former road, street, lane or alley, including the right-of-way therefor, which is included within the right-of-way for the new road, street, lane or alley." (Emphasis added.)

The portion of the roadway which is the subject matter of this litigation was a part of the roadway established at the time it was dedicated for public use. This dedication occurred many years prior to the enactment of sec. 66.296(2m), Stats., which became effective on August 19, 1975.

The parties approach the principal issue of the case using different concepts and we have considered all of the arguments advanced by the respective parties. However, we are of the opinion the issue is whether street alterations, such as are described by the facts of this case, require the city to follow the procedure set forth in sec. 66.296(2), Stats., in those instances where the street was dedicated prior to August 19, 1975, the effective date of sec. 66.296(2m).

At the insistence of the appellant the trial court had issued an injunction based upon its interpretation of sec. 66.296(2), Stats. Following the enactment of sec. 66.296 (2m), the city adopted a proper resolution. The trial court then found that the impediment which was the basis of the previously issued injunction no longer existed. The

injunction was accordingly vacated. As we understand the facts, the city has accomplished the change in the location of the roadway. Nevertheless, the appellant appeals from the order vacating the 1971 injunction. It is now the contention of the appellant that he has been deprived of property rights without due process of law or just compensation as guaranteed by the fourteenth amendment to the United States Constitution and Art. I, sec. 13 of the Wisconsin Constitution.

The appellant argues that by amending the statute to define "discontinuance" the legislature has retroactively deprived him of a reversionary interest in the land subject to the street easement. Sec. 66.296(2m), Stats., does not have such an effect on the appellant's reversionary interest.

It is undisputed that the owner of land abutting a public highway holds title to the center of the highway subject to the public easement. *Walker v. Green Lake County,* 269 Wis. 103, 111, 69 N.W.2d 252 (1955); *Spence v. Frantz,* 195 Wis. 69, 70, 217 N.W. 700 (1928); *Hustisford v. Knuth,* 190 Wis. 495, 496, 209 N.W. 687 (1926); *Mueller v. Schier,* 189 Wis. 70, 81, 205 N.W. 912 (1926); *Gardiner v. Tisdale,* 2 Wis. 115 (*153) (1853). When the highway is discontinued or vacated the land reverts to the owner unencumbered by the easement. *Id.* This reversionary interest exists independently of sec. 66.296, Stats. As the cases above cited indicate, this right existed at common law. The right has been codified in sec. 80.32(3):

"80.32 **Discontinuance of highways; reversion of title.**
". . .
"(3) When any highway shall be discontinued the same shall belong to the owner or owners of the adjoining lands; if it shall be located between the lands of different owners it shall be annexed to the lots to which it originally

belonged if that can be ascertained; if not it shall be equally divided between the owners of the lands on each side thereof."

This court has held that a city street is a public highway. *Herbert v. Richland Center,* 264 Wis. 8, 10, 58 N.W.2d 461 (1953).

It has been repeatedly held that although the alteration of a highway by changing its course is different from a proceeding to discontinue a highway, an alteration of an existing road constitutes a discontinuance of that part of the old road that is not included within the limits of the new road, even though no formal order of discontinuance is made. *State ex rel. Schroeder v. Behnke,* 166 Wis. 65, 68, 69, 162 N.W. 443 (1917); *State ex rel. Funke v. Burgeson,* 108 Wis. 174, 177, 84 N.W. 241 (1900); *Witter v. Damitz,* 81 Wis. 385, 388, 51 N.W. 575 (1892); *State v. Reesa,* 59 Wis. 106, 108, 17 N.W. 873 (1883); *Hark v. Gladwell,* 49 Wis. 172, 177, 5 N.W. 323 (1880). Unlike the instant case, these early cases generally involve the elimination of the entire width of a portion of an existing roadway by a relocation of that portion of the roadway.

Appellant relies on two cases in which this court held that an alteration of a street results in a discontinuance of a portion of the former street not included within the new street even though the discontinued portion abuts the street as altered. *Grunwaldt v. Milwaukee,* 35 Wis.2d 530, 151 N.W.2d 24 (1967); *Miller Investment Co. v. Milwaukee,* 209 Wis. 517, 244 N.W. 753 (1932). Neither of these cases addresses sec. 66.296, Stats. Also, *Miller* was decided prior to the enactment of sec. 66.296. We believe it is particularly significant that both *Grunwaldt* and *Miller* were actions to quiet title and not challenges to the procedure used in altering the location of a street.

Although appellant attempts to here challenge the alleged taking of his reversionary interest, he has not

brought an action to quiet title. The trial court, unnecessarily, and we believe incorrectly, found that the amendment creating sec. 66.296 (2m), Stats., retroactively eliminated the reversionary interest.

The statutory amendment expressly states that it defines discontinuance only "[f]or the purpose of this section." It cannot be held that the legislature intended that the amendment would be applicable to an alleged reversionary interest in a quiet title action. The amendment cannot be considered a retroactive elimination of the appellant's reversionary interest. *Grunwaldt v. Milwaukee, supra,* at 537.

This case is before the court on an appeal from an order vacating an injunction issued to restrain the city from making a street alteration because the city's 1971 resolution had not been adopted in compliance with the statutory procedure. Whether the alteration resulted in a reversionary-type discontinuance of the unused 25 feet is not in issue. Nonetheless, the parties argue it. Appellant contends that a discontinuance resulted under the *Miller* and *Grunwaldt* holdings. Respondent contends the city may still use the property for other street purposes such as sidewalks, street lights, fire hydrants and utility conduits. The trial court found a discontinuance and that conclusion is consistent with the holdings in *Miller* and *Grunwaldt.*

However, because of the factual distinctions, those cases are not authority for the proposition that a city can hold a 40-foot wide right-of-way which contains only 24 foot roadway for more than twenty years, then lose, by discontinuance, the entire width of the unused easement up to the edge of the relocated paved roadway. Prior to this improvement the City of Wauwatosa held an easement on 10 feet of unused land in appellant's front yard on the west edge of the roadway. Now, because the roadway has been relocated, the appellant contends that the easement has been lost not only as to the original 10 feet of unused land but also as to the additional 15 feet no

longer burdened by the actual roadway. If appellant were correct the city could be left without any right-of-way west of the western edge of the surfaced roadway.

In *Miller, supra,* at 524, this court explained that a reversion of the vacated land was necessary because,

". . . [t]he rule is no doubt based largely upon the injustice which would result if the public might acquire lands for one purpose, discontinue the use of the lands for that purpose, and still claim title to the lands for other purposes."

No doubt there may be a factual limit as to how far a city can move a roadway and still retain its easement. Conversely, where a city contemplates further improvements appropriate to use for street purposes the reason for the reversion is not invoked. The primary use recognized for an easement for street purposes is that of public travel, but additional uses incidental to that purpose are permissible. *Randall v. City of Milwaukee,* 212 Wis. 374, 378, 249 N.W. 73 (1933) ; *Park Hotel Co. v. Ketchum,* 184 Wis. 182, 199 N.W. 219 (1924). Further, the court has said that a city has a right to use the full width of a street as surveyed and platted. *City of Madison v. Mayers,* 97 Wis. 399, 412, 73 N.W. 43 (1897). But in *Miller, supra,* at 523, 524, the court said:

". . . While it has been held that, when public authorities acquire title for purposes of public travel, sewers and other conduits may with the permission of the city be laid within the line of the street, such use of the street is an incident to the right to use the way for street purposes. No attempt has ever been made to condemn the premises in question for any use for other than street purposes. Upon what theory the property of the adjoining owner can be used for purposes which are not directly connected with public travel without imposing an additional burden, we do not need to inquire at the present time as it is undoubtedly the established law that it is subject to such use. . . .

"The uses which the trial court found the city makes, or might make of the property no doubt constitute substantial reasons why it is desirable for the city to have title to the property, but the fact that the city can use the property does not enlarge the rights of the city nor change the applicable rules of law. It is conceded that under its charter the city may condemn property for such uses. It clearly appears from the evidence, in fact it may be said to be without dispute, that public travel, using that term in any proper sense, has been wholly diverted from the premises in question and now passes over the new route, which includes only a part of the land condemned in 1869. The fact that now and then pedestrians may pass over it or it is used by persons for parking does not in any sense of the term amount to the use of the premises for purposes of public travel. . . ."

Respondent supports its contention by emphasizing the fact that the cases speak of alterations which change the "street lines," distinguishing them from the situation here where the road was merely moved within the line of the existing right-of-way. The problem with this argument is that the cases cited in support of it do not clearly explain what is meant by "street lines." In *Miller* an ordinance established the width and location of the new roadway and sidewalk. The action was brought to quiet title in the unused portion of the old street which lay outside of the reconstructed street and its sidewalk. Similarly, in *Grunwaldt* the action concerned title to land abutting the roadway. In both these cases the term "street lines" was apparently used synonymously with roadway or improved area. Neither case indicates that an unused portion of the right-of-way existed prior to the alteration.

The determination of whether a reversionary-type discontinuance has been effected in this case, and if so the extent thereof, cannot be made in the instant injunctive proceeding.

The statutory amendment does not purport to affect the adjoining landowners' reversionary interest in a discontinued highway and is therefore not subject to a constitutional challenge on that ground.

Appellant also contends that the amendment constituted a repeal which defeated his accrued cause of action under sec. 66.296(2)(c), Stats., and therefore violated sec. 990.04, *"Actions pending not defeated by repeal of statute."*

In *State ex rel. Sowle v. Brittich,* 7 Wis.2d 353, 361, 96 N.W.2d 337 (1959), it was held:

"Sec. 990.04, Stats., has no application to this case. This section deals with laws which are repealed. Sec. 52.35 did not repeal any law but amended a statute by adding a provision, and sec. 52.355 created a new section. These sections, with the other amendments, were for the purpose of revising the paternity statutes as a supplement to the 1955 Children's Code. See ch. 296, Laws of 1957. Sec. 990.04 seeks to have liability for committed offenses, penalties and forfeitures incurred, and rights of action accrued, under the statute which is repealed. The rights contended for by the defendant are not of these classes."

Similarly here, no statute has been repealed and the statute which was amended did not create a cause of action. Sec. 990.04 has not been violated.

Sec. 66.296(2)(c), Stats., gives abutting landowners the right to prevent the discontinuance of a street. Because this statute had not been addressed before in the context of this particular type of alteration, this void in the law permitted the appellant to successfully object to the proposed improvement. It is this right to object to this particular type of alteration that has been eliminated by the amendment.

Contrary to appellant's contention, the effect of the amendment is not retroactive. The city adopted a new

resolution regarding the improvement after the amendment was enacted. On the basis of the amendment and the new resolution the injunction was vacated. Because the city no longer had to comply with the requirements of sec. 66.296 (2), Stats., in order to make the improvement, the construction could no longer be enjoined.

". . . However, permanent injunctions are not irrevocable. They are permanent so long as the conditions which produce the injunction remain permanent. . . .

" ' . . . Where the grounds and reasons for which the injunction was granted no longer exist, by reason of changed conditions, it may be necessary to alter the decree to adapt it to such changed conditions, or to set it aside altogether, as where there is a change in the controlling facts on which the injunction rests, or where the applicable law, common or statutory, has in the meantime been changed, modified, or extended. Such change in the law does not deprive the complainant of any vested right in the injunction because no such vested right exists. On application to modify the decree, the inquiry is simply whether changes since its rendition are of sufficient importance to warrant such modification. . . .'

" . . . .

" 'But in so far as the final decree is executory in effect, the court which entered it has inherent power to modify or vacate the injunction to conform to a change of conditions occurring after it was awarded.'" *Condura Construction Co. v. Milwaukee Building & Const. Trades Council,* 8 Wis.2d 541, 546, 99 N.W.2d 751 (1959).

The injunction could only have been continued if the amendment which permitted the city to proceed deprived the appellant of a fundamental vested right. This court has recognized the following rights of landowners in an abutting street, (1) access, (2) light and air, (3) view, (4) to have the street kept open and continued as a public street for the benefit of the abutting property, and (5) whatever adds to the value of the street to the abutter. *Randall, supra,* at 378.

Sec. 80.47, Stats., provides:

"**80.47 Rights of abutting owners.** The owners of land abutting on any highway, street or alley shall have a common right in the free and unobstructed use thereof to its full width, and no town, village, city, county, company or corporation shall close up, use or obstruct any part of the highway, street or alley so as to materially interfere with its usefulness as a highway or so as to damage property abutting thereon, or permit the same to be done, without due compensation being made for any damage resulting therefrom to the owners of land upon either side of such highway, street or alley. . . ."

These rights are rights of property of which the owners cannot be deprived without compensation. *Smith v. Beloit,* 122 Wis. 396, 416, 100 N.W. 877 (1904).

The right of access and the expectation of continued existence as a public way are involved where a discontinuance is proposed. *Johnston v. Lonstorf,* 128 Wis. 17, 107 N.W. 459 (1906). These rights have not been affected by the amendment. Where an alteration which falls within the categories set out in sec. 66.296(2m), Stats., is proposed there is no danger that an abutting landowner's access to the street will be lost. Following the improvement here the street still existed; it was six feet wider and it carried the same traffic between the same two points. Appellant had no fundamental vested right to object to this type of alteration. Any rights the original statute gave to the appellant existed only because of confusion between the type of discontinuance which requires the consent of abutting landowners and the type of discontinuance recognized by this court in quiet title actions. The amendment was necessary to clear up that confusion and correct the trial court's erroneous application of the *Miller* and *Grunwaldt Cases* to sec. 66.296.

In *Huening v. Shenkenberg,* 208 Wis. 177, 242 N.W. 552 (1932), this court held that the written consent of the abutting landowners was not needed where the town

board voted to narrow a platted, but unused and unimproved, street from 60 to 38 feet. The court held that the action was an alteration rather than a discontinuance under sec. 61.38, Stats. 1931 (similar to sec. 66.296). The court also held that the unused 11 feet on each side of the road would revert to the abutting owners. This case illustrates that a discontinuance can exist for purposes of reversion but not for purposes of requiring consent under the statute.

The procedure for notice, hearing and objection set out in sec. 66.296(2), Stats., is designed to protect abutting landowners from the loss of access to a public highway. Where the alteration poses no such danger no reason exists to allow a single abutting landowner to block an improvement. The amendment merely codifies the rule as stated in *Huening*. Under *Huening* the appellant had no right to object to the improvement.

The amendment of the statute by enactment of sec. 66.296(2m), Stats., did not eliminate any vested rights of abutting property owners and is therefore not unconstitutional.

*By the Court.*—Orders affirmed.