HEISE, Plaintiff-Appellant, v. VILLAGE OF PEWAUKEE, Defendant-Respondent.

Supreme Court

*No. 76–749. Argued October 8, 1979.—Decided November 6, 1979.*
(Also reported in 285 N.W.2d 859.)

For the appellant there was a brief by *Larry Ratzel* of Elm Grove; a reply brief by Martin Heise, pro se, and oral argument by *Daniel Fay* of Pewaukee, and Martin Heise, pro se.

For the respondent there was a brief by *August E. Fabyan, Jr.,* and oral argument by *Timothy Garrity*, both of Hartland.

COFFEY, J.   This is an appeal from a judgment of the County Court of Waukesha County, entered on April 20, 1977, adjudging that certain real estate was dedicated to the Village of Pewaukee by the appellant's predecessor in title. [1]

The central issue in this case is the ownership of a strip of land in the Village of Pewaukee on Pewaukee Lake, immediately adjacent to a lot owned by the ap-

---

[1] Dedication is the appropriation of land to some public use, made either expressly or impliedly by the owner and accepted for such use by or on behalf of the public. Dedication may be common law or statutory. Black's Law Dictionary 500 (4th ed. rev. 1968).

pellant, Martin Heise. Both Mr. Heise and the Village of Pewaukee claim title to the strip of land.

On August 3, 1887, when the plat of land known as the Lakeview Addition (Diagram 1) was recorded in the Waukesha County register of deeds' office, neither the strip of land which is the subject of this dispute nor the lot owned by the appellant existed. The 1887 plat shows the intersection of what was then Oakton Avenue (now known as Park Avenue) and Lake Street terminated at the meander line[2] or boundary of Lake Pewaukee. On the plat Oakton Avenue runs parallel to the lake boundary with at 16-foot strip of dry land separating Oakton Avenue from Lake Pewaukee.

On October 14, 1896 Walter C. Clark, his wife, May, Ola M. Anderson and Helen N. Richmond executed a warranty deed to the Village of Pewaukee that purported to convey land extending beyond the termination point of Lake Street into the waters of Pewaukee Lake as shown by the plat of Lakeview Addition. No one knows when the land formed but apparently this area of land conveyed in the deed was created out of Pewaukee Lake sometime between the date of the initial plat of the Lakeview Addition, 1887, and the date of the deed, 1896. It cannot be determined from the evidence adduced at trial whether this newly created land was formed by accretion,[3] reliction[4] or some process of reclamation.[5]

The full extent of this newly created land, along the shoreline of Pewaukee Lake, is shown by the plat of

[2] Meander line is the boundary or border line of a body of water. Black's Law Dictionary 1132 (rev. 4th ed. 1968).

[3] Accretion is the process whereby land is created through the gradual depositing of soil by operation of natural causes. *Id.* at 36.

[4] Reliction is the process whereby land is created by the permanent receding or withdrawal of water in a lake or river. *Id.* at 1455.

[5] Reclamation is the process whereby land is created by the operation of artificial means.

DIAGRAM 1

Clark's Subdivision (Diagram 2), duly recorded on August 1, 1908. The Clark's Subdivision plat establishes that the amount of dry land between Oakton Avenue and Pewaukee Lake had increased from 16 feet to a width of from 50 to 72 feet. Subsequently, after the addition to the land through accretion, reliction or reclamation, fourteen new lakeshore lots were carved out of this recently formed land with Lot 1 located immediately adjacent to the strip of land shown on the Clark Subdivision plat as an extension of the original Lake Street. This extension of Lake Street is the same land conveyed to the Village of Pewaukee by the 1896 warranty deed from Walter and May Clark, his wife, Ola M. Anderson and Helen Richmond and is the subject matter of the present dispute.

In November of 1975 the appellant, Martin Heise, purchased Lots 1 and 2 in the newly formed land between Oakton Avenue and Pewaukee Lake, as shown in the plat of Clark's Subdivision. The property was conveyed to the appellant and his wife, Anna Heise, by deed from the Pewaukee Building Panel Corporation, a corporation primarily owned by the appellant and members of his family.

Shortly after purchase of Lots 1 and 2, the appellant sought to obtain title to the land adjacent to Lot 1, the land shown as an extension of Lake Street on the Clark Subdivision plat, in order to construct a garage on it. When the appellant inquired as to ownership of the land he was told that the Village of Pewaukee owned the land as a continuation of Lake Street. Appellant asked the village to either sell him the land or to vacate it, but the village declined to sell or vacate.

Following the village's refusal to vacate or sell the land to Heise, appellant investigated the village's title and discovered the 1896 warranty deed in which the Clarks, Anderson and Richmond conveyed the subject property to the village and found that the 1896 deed contained the following reversionary clause:

DIAGRAM 2

CLARK'S
SUBDIVISION

"Said piece to be accepted, kept, used and maintained by said grantee as and for a public street or highway approach to said lake and for no other purpose, and in case of the discontinuance of such use and maintenance, said piece shall revert to said grantors, their heirs or assigns."

Upon discovery of the deed and its reversionary clause the appellant obtained a quit claim deed (dated April 15, 1976) from Helen R. Jerome, the sole heir to the grantors named in the 1896 deed, conveying the disputed property to him. Shortly thereafter, in spite of the village's refusal to vacate or sell the property, the appellant commenced construction of a concrete slab for a garage and patio, which structures encroach onto and over the disputed land.

On May 5, 1976 the appellant erected a rope across the entrance to the Lake Street extension with a sign indicating it was private property. The police issued a citation to the appellant for obstructing a public street in violation of Ordinance 10.07(11) of the Municipal Code of the Village of Pewaukee. Appellant contested the citation and the matter was set for trial in the County Court for Waukesha County.

On July 22, 1976 the appellant commenced an action to quiet title to the property. The quiet title action and the action contesting the citation were consolidated by stipulation of the parties entered on September 3, 1976. The trial on the action to quiet title was held in the County Court for Waukesha County and the ordinance violation was held open pending this appeal.

At the trial the appellant testified that the disputed property was for the most part vacant. He stated that the property consisted of an area of grass, dirt and gravel with a twenty foot driveway approach to Lake Street. In support of his argument for abandonment of the property by the village, appellant testified that when he originally moved into Lots 1 and 2 the disputed prop-

erty was covered with debris which he hauled away and further that during the winter months the village of Pewaukee frequently dumped snow on the property.

Gerald Kramer, a mason and cement contractor who was regularly employed by the appellant and helped in the construction of the appellant's house, garage slab and patio, was called to testify on the appellant's behalf. He stated in further support of the appellant's abandonment theory that when he first saw the disputed property it was covered with garbage and debris, but that there was a lane over the property, 30 to 40 feet in width and approximately 100 feet long, which was covered with a combination of sod and gravel.

William E. Brown, a resident of the area, testified that since 1927 the Village of Pewaukee has maintained some kind of a lane or roadway over the property down to the lake front. Furthermore, he testified that the Lake Street extension provided a normal access for vehicular traffic onto and off of the ice in the wintertime while in summer the land was used as a regular access to the lake for boat launchings. He stated that although the village had erected signs on the property designating the area as a fire lane and forbidding parking or boat launchings, the area residents disregarded the warning signs pursuant to an understanding with the village and regularly launched their boats from the property. Lastly, Mr. Brown testified that people fished the Pewaukee Lake from the property almost daily and occasionally used it for swimming.

Another resident of the area, Charles F. White, testified that he personally had used the Lake Street extension as an access road to the lake on a regular basis from 1950 until 1973 when he transferred his boat mooring to another part of the lake. He also testified that the property was generally kept free from trash except for a time when there was debris from a burned out house which originally stood on the appellant's lot.

David L. Klug, an administrative engineer for the Village of Pewaukee, testified that the Lake Street extension had been open to the public for as long as he knew. He stated that occasionally village work crews cleaned up the area and that as recently as 1970 the village laid crushed limestone on the lane to a width of about 20 feet. He stated that also in the past the village fire and police departments had used the Lake Street extension for emergency access to the lake.

On the basis of the evidence, the trial court found the property in question had been effectively dedicated to the Village of Pewaukee by the appellant's predecessors in title and the village's continued maintenance and use of the property was sufficient to prevent any reversion.

On appeal the appellant contends that the disputed portion of Lake Street was never effectively dedicated to the Village of Pewaukee, or in the alternative, if the dedication is found valid, that all or at least part of the disputed property has reverted back to him as a result of the village's abandonment or failure to maintain the land as a street or highway. Lastly, appellant contends if this court rules the dedication to be valid and that no reversion occurred, he is, nevertheless, entitled to the land upon which his garage slab and patio encroach because there is no interference with the public's right-of-way.

*ISSUES*

1. Did the trial court err in finding that the Village of Pewaukee held title to the disputed portion of the Lake Street extension?

2. Has the property in question been maintained as a highway or street such that title has not reverted back to the original owners?

In this case it is undisputed by the parties that the recording of the plat of Lakeview Addition in the Waukesha County Register of Deeds' office constituted a statu-

tory dedication to the Village of Pewaukee of the original Lake Street then and there existing as of 1877. The reason that a conflict over ownership exists in this case is because at the time the Lakeview Addition plat was recorded that portion of Lake Street which is in dispute here was either undiscovered land submerged under the waters of Pewaukee Lake or it did not exist. Because the property did not exist at the time of the recording of the Lakeview Addition plat it was impossible for it to be reflected in the deed of dedication of the disputed area to the Village of Pewaukee. It is interesting to note that the 1887 dedication of the 16 feet of Lake Street down to the original shoreline of Pewaukee Lake gave the village all the land that then existed.

However, since the village owned the land known as Lake Street down to the old waterline by virtue of the 1887 dedication, the question arises as to whether the village, by virtue of its title to the original land, was also entitled to the newly created land between Lake Street's original termination point and the new waterline. It is well established that an owner of land abutting on the waters of a river or lake possesses certain riparian or littoral rights.[6] Riparian rights include:

". . . the right to access to the water; the right to extract and use the water, to a certain extent; the right to have the stream flow in its natural course and volume or to have the body of water remain in its natural condition; and the right to additions to the land by accretions and relictions." 78 Am. Jur.2d, *Waters,* §265, p. 710.

This court, as early as 1877, held that riparian rights include ". . . the right of the riparian owner to accretions formed by slow and imperceptible degrees upon or

---

[6] Riparian or littoral rights refer to the rights of one owning land on the banks of a river, lake or sea to have access to and use of the shore and water.

against his land, and to those portions of the bed of the lake or pond adjoining his land uncovered in the same manner by the dereliction of the water therefrom." *Boorman v. Sunnuchs,* 42 Wis. 233, 242 (1877). The riparian owner's right to such newly created lands is absolute as against all the world excepting the public's rights of navigation. *Doemel v. Jantz,* 180 Wis. 225, 193 N.W. 393 (1923).

Riparian rights are not limited to private owners. This court has held that if a public street or highway exists so that its boundary line and the waters of a navigable lake or river meet, the riparian rights incident to the land composing the street belong to the public. *Village of Pewaukee v. Savoy,* 103 Wis. 271, 79 N.W. 436 (1899) ; *Lawler v. Brennan,* 150 Wis. 115, 134 N.W. 154 (1912) ; *Jansky v. Two Rivers,* 227 Wis. 228, 278 N.W. 527 (1938).

The case of *Jansky v. Two Rivers, supra,* is especially noteworthy as the facts in that case are almost identical to those in the present case. In *Jansky,* as in this case, a city street originally extended to the shoreline of a lake. Subsequent to the recording of the plat of the city the lake shoreline receded and approximately 425 feet of new land was added. One of the owners of land originally abutting on the lake brought a quiet title action to determine the extent of his land as a result of the lake receding. In that case the court cited *Village of Pewaukee v. Savoy, supra,* and held that part of the newly added land ". . . must be apportioned to the City of Two Rivers by reason of riparian rights attaching in favor of a municipality to accretions or reliction along a public highway." *Jansky v. Two Rivers, supra* at 241.

In the present case, it could not be determined whether the newly added land was the result of a natural process such as accretion or reliction, or whether it was the re-

sult of an artificial process such as reclamation. However, on the basis of the relatively short period of time over which the new land appeared (only nine years), the trial court reasoned that it could not have been the result of a natural process, which generally operates in a gradual manner and takes many more years but was probably the result of the artificial process of reclamation. While recognizing the rule that riparian owners are entitled to additions to their land caused by accretions and relictions, the trial court was uncertain whether this same rule would apply to new lands formed by reclamation. Recently, this court in *De Simone v. Kramer*, 77 Wis.2d 188, 252 N.W.2d 653 (1977) held that:

". . . appears to be the prevailing doctrine that the causing or hastening of gradual deposits by artificial constructions, made by persons other than the benefited and claiming owner, does not prevent the doctrine of accretions from applying. 7 *Powell on Real Property*, *supra*, §983, p. 614." *Id.* at 199.

In that case land was artificially extended as a result of a government dredging operation in a navigable channel. The artifically formed land inured to the benefit of the owners of the abutting land.

In view of the holdings in *Jansky v. Two Rivers, supra*, and *De Simone v. Kramer, supra*, we hold that regardless of whether the land in the Lake Street extension was formed as a result of natural or artificial processes, the Village of Pewaukee has title to the land by virtue of its ownership of Lake Street up to the original shoreline.

*Reversion*

The appellant further contended that the ownership of the property in question reverted back to him, as successors to the original grantors, as the village failed to use or maintain the land as a highway or street access to the lake. Appellant claims the right of reversion ex-

ists in this case under the provisions of the 1896 deed conveying the land to the village and under sec. 80.32, Stats.[7] This statutory right of reversion is a codification of the common law right of reversion that existed in Wisconsin at that time:

> "It is undisputed that the owner of land abutting a public highway holds title to the center of the highway subject to the public easement. *Walker v. Green Lake County*, 269 Wis. 103, 111, 69 N.W.2d 252 (1955); *Spence v. Frantz*, 195 Wis. 69, 70, 217 N.W. 700 (1928); *Hustisford v. Knuth*, 190 Wis. 495, 496, 209 N.W. 687 (1926); *Mueller v. Schier*, 189 Wis. 70, 81, 205 N.W. 912 (1926); *Gardiner v. Tisdale*, 2 Wis. 115 (*153) (1853). When the highway is discontinued or vacated the land reverts to the owner unencumbered by the easement. *Id. This reversionary interest exists independently of sec. 66.296, Stats. As the cases above cited indicate, this right existed at common law.* The right has been codified in sec. 80.32(3) . . ." (emphasis supplied.) *Miller v. City of Wauwatosa*, 87 Wis.2d 676, 680, 275 N.W.2d 876 (1979).

Since we hold that the 1896 deed adds nothing to the appellant's existing claim to the land, because the village already owned the entire parcel of the land then in existence allegedly conveyed by the deed, there is no reason for us to consider the issue of whether a reversion occurred under that instrument. However, there remains the question of whether a reversion occurred under common law or under sec. 80.32(3), Stats.

---

[7] "80.32 Discontinuance of highways; reversion of title. (1) . . .

"(2) . . .

"(3) When any highway shall be discontinued the same shall belong to the owner or owners of the adjoining lands; if it shall be located between the lands of different owners it shall be annexed to the lots to which it originally belonged if that can be ascertained; if not it shall be equally divided between the owners of the lands one each side thereof."

The appellant contends that the village failed to use the property in question as a street or highway within the common understanding and definition of these terms and, therefore, he is entitled to the land. As support for this contention the appellant cites *Town of Polk v. Gilbert*, 258 Wis. 150, 45 N.W.2d 88 (1950), in which the court rejected a town's claim that it had acquired a highway over a piece of lakeshore property on the ground that the land claimed was of such a character that it could not be used for highway purposes because ". . . the contour of the ground was such as to make automobile travel impossible." *Id*. at 152. The court agreed with the trial court's finding that the land was incapable of serving as a highway because it could not be used for purposes of traveling anywhere the public might be interested in going.

*Town of Polk* is clearly distinguishable from the present case because there the town's claim to the property was by prescription[8] while here the village's claim to the land is based on a dedication. The test used to determine whether a local government has acquired the property of another by adverse possession is clearly not the same test as that used to determine whether a party has acquired government property by virtue of the government's abandonment of the same. In addition, the condition of the land in *Town of Polk* was such that the use of the land for vehicular traffic was almost impossible and, therefore, never attempted. In the case before the court a part of the land was suitable for vehicular traffic and in fact was used for vehicular travel.

Although not as well-traveled as other streets, the Lake Street extension was used as a roadway to the lake

---

[8] Prescription refers to the acquiring of title to property by long-continued use and enjoyment. Black's Law Dictionary 1346 (4th ed. rev. 1968).

for summer and winter sporting activities, fishing, boating, ice skating, etc. It is obvious that streets terminating at the edge of a body of water are not subject to the same degree of vehicular travel as other through streets. This fact, however, does not destroy their classification as a street or highway.

Faced with a similar problem in *Walker v. Green Lake County*, 269 Wis. 103, 69 N.W.2d 252 (1955), this court stated:

> "The plaintiffs contend that the extension as to the highway is not a highway but is merely an area for parking cars and for recreational purposes. They contend that highways are limited to roads for the free and unobstructed passage of vehicles in each direction. It is true that the original definitions of highways were limited to lands used for the purpose of direct travel. However, the term 'highway' may be used in a broader sense. The conception of highways is changing and it is now felt that highways established for the general benefit must admit of new methods of use whenever it is found that the general benefit requires it. For the courts to limit the use of highways without considering new methods and usage would defeat, to some extent at least, the purpose for which highways are established." *Id.* at 112.

Perhaps with this thought in mind the legislature included a very broad definition of the term highway in the chapter of the Wisconsin statutes on statutory construction. Sec. 990.01(12), Stats., provides as follows: " 'Highway' includes all public ways and thoroughfares and all bridges upon the same." This construction of the term *highway* applies unless it would "produce a result inconsistent with the manifest intent of the legislature." In light of such a broad definition, it is clear that the Lake Street extension has served as a highway.

Appellant next contends that, even if the use is shown to be that of a highway or a street, the village has abandoned or discontinued this use of the land within the

meaning of sec. 80.32(2), Stats., and that, therefore, he is entitled to the property by virtue of sub. (3) to that section. Sec. 80.32(2), Stats., provides:

"(2) Every highway shall cease to be a public highway at the expiration of 4 years from the time it was laid out, except such parts thereof as shall have been opened, traveled or worked within such time, and any highway which shall have been entirely abandoned as a route of travel, and on which no highway funds have been expended for 5 years, shall be considered discontinued."

Explaining this section in *State ex rel. Young v. Maresch*, 225 Wis. 225, 232, 273 N.W. 225 (1937), the court stated that "[a]bandonment of a highway by virtue of that statute can occur only when it has been 'entirely abandoned as a route of travel,' *and* when 'no highway funds have been expended [upon it] for five years.'" (Emphasis supplied.) In effect, both conditions must be met.

In the case at bar the evidence presented at trial clearly shows that the entire 60 feet of the Lake Street extension was never abandoned as a route of travel. At trial the testimony of the two area residents was to the effect that it had always been used by the public for purposes of access to the lake on a regular basis since 1927. In light of the fact that the Lake Street extension has been used as a route of travel, the question of whether the village had expended money on that portion of the street within the past 5 years is irrelevant. Before the court could rule that the village has discontinued its use of the property as a highway it is incumbent upon the appellant to demonstrate total abandonment on the part of the village and the lack of any public expenditures on the highway within the past 5 years.

However, the first part of sec. 80.32(3), Stats., may be applicable in this case. Subsec. (3) provides that portions of a highway which have not been opened, traveled or worked within four years of the time it was laid out shall be deemed discontinued. Although the Lake Street extension is platted as 60 feet wide, only about 20 feet of this width has actually been worked. Thus, it would appear that at least a part of the land could conceivably revert to the appellant.

The village contends that sec. 80.32, Stats., does not apply to village or platted roads but only to town roads. As support for this contention the village cites to the fact that sub. (1) of sec. 80.32, Stats., expressly refers only to towns. However, it should be pointed out that subs. (2) and (3) of this statute, under which the reversion would have occurred, do not refer to any specific unit of government, but refer only to highways in general and using the broad definition of highway contained in sec. 990.01, Stats., and, therefore, would be clearly applicable here.

Moreover, in *Miller v. City of Wauwatosa,* 87 Wis.2d 676, 681, 275 N.W.2d 876 (1979), this court stated in the context of this statute (sec. 80.32, Stats.) that a city street is a public highway and that when a municipality alters a street such that a portion of the former street is not included within the new street, there is a discontinuance of that portion of the old street no longer being used. Thus, on the basis of that case it would appear that appellant is entitled to that portion of the disputed property that has not been opened, traveled or worked.

However, in *Paine Lumber Co. v. City of Oshkosh,* 89 Wis. 449, 61 N.W. 1108 (1895), this court held that the statutory predecessors to sec. 80.32(2), Stats., did not apply to "streets dedicated or granted by recorded plat, operating as a statutory conveyance. Such streets are

not highways within their purview and meaning." *Id.* at 457. In *Paine Lumber Co., supra,* the court relied heavily on the earlier case of *Reilly v. City of Racine,* 51 Wis. 526, 8 N.W. 417 (1881), wherein the court held that: "Until the time arrives when any street or part of a street is required for actual public use, . . . no mere *nonuser,* of any length of time, will operate as an abandonment of it, and all persons in possession of it will be presumed to hold subject to the paramount right of the public." *Id.* at 529–30. The reason for this rule was that cities and villages must have a ". . . chance of growth commensurate with the public necessity, which will not be lost by mere lapse of time. . . ." *Id.* at 530. *See also: Klinkert v. City of Racine,* 177 Wis. 200, 188 N.W. 72 (1922).

More recently in *Jefferson v. Eiffler,* 16 Wis.2d 123, 113 N.W.2d 834 (1962), this court reaffirmed the *Reilly* holding that nonuse of a street or alley, or part of a street or alley, will not work as an abandonment until such time as the street, alley or portion thereof is required for actual public use, but is not in fact used. The court also stated that even after such time as public use requires the opening of a particular street or alley, no abandonment will be found absent a manifest abuse of discretion by the public authority in charge.

Although *Miller v. City of Wauwatosa* appears to contradict these earlier cases, it can be distinguished. The earlier cases all involved streets or alleys which had not yet been opened or had been only partially opened to public travel. Although laid out in the original plats of the cities for future use, the need to open them had not yet arisen. To hold that under such circumstances land set aside for future streets is abandoned and reverts to the abutting owners would clearly thwart the long-range planning and development efforts of local governments. In *Miller,* on the other hand, the alleged abandonment

occurred with respect to a portion of land which, having been opened and used as a street, was later abandoned as a result of alterations made in the width and location of the street to accommodate area growth. It cannot be said that the portion of street discontinued in *Miller* would be needed for future growth and development, for it was just such growth and development which caused the abandonment of that land in the first place.

In the case presently before the court while the full width of the Lake Street extension has not been totally paved and opened for vehicular traffic, nevertheless the unpaved portion of the land allows for the municipality's possible future use and expansion. Thus, the *Reilly* rationale applies and no abandonment has occurred.

Lastly, appellant argues that even if this court should find that a valid dedication did occur and that the village did not abandon or discontinue the street, he should nevertheless be allowed to retain that portion of the land upon which the concrete slab and patio rest since they do not interfere with the public's use of the land. This contention, however, is unsupported in law. As sec. 86.04(1), Stats., provides:

"Highway encroachments. ORDER FOR REMOVAL. If any highway right of way shall be encroached upon, under or over by any fence, stand, building or any other structure or object, and including encroachments caused by acquisition by the public of new or increased widths of highway right of way, the department of transportation (in case of a state trunk highway), the county highway committee (in case of a county trunk highway), or the city council, village or town board (in case of a street or highway maintained by or under the authority of any city, village or town) may order the occupant or owner of the land through or by which such highway runs, and to which the encroachment shall be appurtenant, to remove the same beyond the limits of such highway within 30 days. The order shall specify the extent and location

of the encroachment with reasonable certainty, and shall be served upon such occupant or owner."

In *Klinkert v. Racine,* 177 Wis. 200, 188 N.W. 72 (1922), this court held that "The placing of buildings or other obstructions upon an alley of the city constitutes an obstruction and a public nuisance. This wrong on the part of the obstructor will not ripen into a right unless the city by its conduct shall become estopped from asserting its right." *Id.* at 204.

Here, there is no evidence of any conduct on the part of the village that would estop it from asserting its rights. In fact the village made its position clear to the appellant before any construction or building had taken place, by denying his petition to vacate and refusing to sell the land. Even though the appellant took a calculated risk and expended funds in the building and construction of a concrete slab and patio, we know of no decision in this court supporting his contention of a valid interest in the disputed property. Therefore, we hold that the title to the Lake Street extension remains with the Village of Pewaukee and does not revert to the original owners and/or their successors in title.

*By the Court.*—Judgment affirmed.