Wollman vs. Ruehle.

WOLLMAN, Respondent, vs. RUEHLE, Appellant.

*May 9 — May 24, 1898.*

*Boundaries: Fences: Acquiescence: Presumptions: Adverse possession: Tenants in common.*

1. Although at the time when a fence was built the exact location of the true boundary line was not known by the parties, yet where the line of the fence was considered to be such true line, acquiescence therein and undisputed possession up to the fence for over forty years raises a strong presumption that the line so recognized is the true line; and such presumption is not overcome by the mere fact that a survey, made long after government monuments have been obliterated or lost, reveals another line.

2. Possession by one tenant in common, adverse to a third person, is the possession of all the cotenants.

3. Proof of uninterrupted, open, and exclusive possession of land for a period of over twenty years, by one not owning the legal title and his privies, if unexplained, establishes the fact of adverse possession from the beginning.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Reversed.*

Ejectment for a small strip of land, containing about $\frac{72}{100}$ acres. On October 18, 1839, one John Rock entered the land owned by both plaintiff and defendant. The title to the east half of the tract came by mesne conveyances to plaintiff, and of the west half to defendant. In 1856 the title to plaintiff's land was in one Philip Heavner, and that of defendant in Alois Mallsacher. At that time there was a fence, supposed to be on the line between the two tracts, and which has been maintained substantially in the same place to the day of trial. Shortly prior to the commencement of this action, the plaintiff procured a survey of the land to be made, from which it appears that defendant's fence is over on plaintiff's land a little less than twelve feet. The evidence of defendant tends to show that Mallsacher and Heavner agreed on this fence as the boundary line, and that defendant's grantor was to keep up the north half and plaintiff's grantor the south half. The fence has since been so maintained by the owners of the land. Defendant's father purchased the westerly tract in 1856, and the land has been cultivated and worked for farm purposes up to the fence since that time.

Defendant's father died in 1867, leaving a wife and several children. Defendant continued to reside on and work the farm, and in 1877 secured quitclaim deeds from the other heirs of their interest in the land.

The court found that the plaintiff was the owner of, and entitled to the possession of, the disputed strip, and judgment was entered for the recovery of the possession of the same. From this judgment the defendant appeals.

Wollman vs. Ruehle.

For the appellant there was a brief by *Christian Doerfler,* and oral argument by *John H. Roemer.* They argued, among other things, that in order to create the privity of estate requisite to enable the subsequent occupant to tack to his possession that of a prior occupant it is not necessary that there should be a conveyance in writing. The possession of the prior occupant may be passed by operation of law, as in case of descent. Wood, Limitations (2d ed.), § 271; Newell, Ejectment, 740; Sedgwick & W. Trial Tit. Land (2d ed.), §§ 747, 748; *Sherin v. Brackett,* 36 Minn. 152.

For the respondent there was a brief by *Ryan & Merton,* and oral argument by *T. E. Ryan.* They contended, *inter alia,* that while it is not necessary, in order to create such privity as will enable a subsequent occupant to tack his possession to that of the prior occupant, that there should be a conveyance in writing, and although such prior possession may be transferred by parol, yet it must clearly appear that the particular premises, as in this case the strip in dispute, were in fact embraced in the deed or transfer in whatever form it may have been made. No presumption can be indulged in on this subject. The defendant wholly failed to show any such transfer of the premises or the strip in dispute, and is therefore not permitted under the law to tack the previous possession of his father to his in order to make out the statutory bar. *Ryan v. Schwartz,* 94 Wis. 403; *Sydnor v. Palmer,* 29 id. 252; *Graeven v. Dieves,* 68 id. 317; *Ablard v. Fitzgerald,* 87 id. 516; *Allis v. Field,* 89 id. 327.

BARDEEN, J. The undisputed evidence shows that in 1856, at the time defendant's father purchased the westerly tract, he was informed that the fence was on the true line, by both his grantor and Heavner, the owner of the other tract, and that it was then agreed which portion of the fence each should keep up. It is further established beyond dispute that defendant's father occupied the premises on his side, up

to the fence, until his death in 1867, and that defendant remained in possession with the consent of the other heirs, and as one of the claimants to the land, until he secured their title, and thence on to the commencement of this suit. It is also equally certain that when the fence was first established the exact location of the true line was not known by the parties, but that the location where the fence was actually built was considered the true line, and was agreed upon and lived up to for over forty years without question. Long acquiescence in the line so established, with undisputed possession for such a long period of time, raises a strong presumption that the line so recognized is the true line, and is not overcome by the mere fact that a survey, made long after government monuments have been obliterated or lost, reveals another line. Such is the holding in *Welton v. Poynter*, 96 Wis. 346, and is a rule in favor of the stability of title.

The possession of defendant or his father was not simply permissive. It was distinctly hostile, and founded upon the agreement and location of the fence. The son's possession was co-extensive with that of his father. He held the premises after his father's death, claiming an interest in his own right, and by permission and under agreement with the other heirs. The possession of one tenant in common is the possession of all the cotenants. Newell, Ejectment, 128, 129. And in general all acts done by a cotenant, relating to or affecting the common property, are presumed to have been done for the benefit of all the cotenants.

Independently of the agreement to establish the line, there seems to be ample proof of possession of defendant, and those in privity with him, to carry it far beyond the statutory period of limitation. Sec. 4207, R. S. 1878, provides that "no action for the recovery of real property or the possession thereof, shall be maintained, unless it appear that the plaintiff, his ancestor, predecessor or grantor, was seized

or possessed of the premises in question, within twenty years before the commencement of such action." The answer sets up that the plaintiff has not been so seised or possessed, and the proof amply sustains such contention. When plaintiff produced proof of title from the common grantor, showing legal title in himself, under sec. 4210, R. S. 1878, the presumption arose that he had been possessed of the disputed premises within the time prescribed by law, and that the possession of defendant was deemed to have been under, and in subordination to, the legal title. When, however, the defendant showed uninterrupted, open, and exclusive possession for a period of over twenty years, by himself and his privies, such possession, unexplained, established the fact of adverse possession from the beginning. This question is so fully and ably discussed in *Wilkins v. Nicolai*, 99 Wis. 178, that it needs but a reference to that case to settle the questions here involved adversely to the plaintiff. Here there was no attempt made to explain away or attack the character or nature of defendant's possession, so that under the rule laid down in the cases cited the finding and judgment should have been for defendant.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment for the defendant.