ROSEN, Respondent, vs. IHLER and another, Appellants.*

*May 5—June 8, 1954.*

* Motion for rehearing denied, with $25 costs, on October 5, 1954.

For the appellants there was a brief and oral argument by *Howard W. Eslien* of Oconto Falls.

For the respondent there was a brief by *Chadek, Cornelisen, Denissen, Farrell & Kranzush* of Green Bay, and oral argument by *Charles M. Denissen*.

STEINLE, J. The appellants challenge the trial court's determination of the location of the boundary line between the property of the parties. They maintain that the true section line which represents such boundary is located somewhat east from that found by the court. They claim that their survey is the only accurate and complete survey presented and that it correctly establishes the section line in conformity with the original government survey and the field notes thereof, together with the recollection of disinterested witnesses.

The trial court determined that the section line between sections 19 and 20 is a line which begins at the common corner of sections 17, 18, 19, and 20 and thence runs south zero degrees and five minutes (0° 5') east.

At the trial both parties presented expert witnesses and others to sustain their respective positions. It appears that the original government survey of the section line between sections 19 and 20 was made in 1839 or 1840. A copy of the field notes of that survey is in evidence. The notes show

the section line to run south from point where survey was commenced. Alva Hillis, former city engineer of Marinette, surveyed the line between sections 19 and 20 in 1893 and on occasions thereafter. His field notes are available. Stakes by Mr. Hillis still stand and respondent claims that there is remaining evidence of ancient fences referred to by him in his notes.

At the trial, three surveyors were called as expert witnesses by the respondent. Harry Hall, an engineer and surveyor, located the section line along a fence line running two and one half to three feet from and westerly of two buildings, a garage and barn. He testified that he had talked with Mr. Hillis before making his survey; that he found postholes and wire through old trees as evidence of an old fence; that it is common knowledge that section lines are off one or two degrees and that government surveys vary because in rare cases is it ever found that the line runs due north and south or due east and west.

Harry Grimmer, construction engineer, contractor, and surveyor, also testified on behalf of respondent, and placed the section line west of the buildings. He said that in making his survey he ran across evidence of former surveys; that he attempted to get his line identical with the former survey (that of Hillis) and with the notes of the original government survey; that his line comes within nine-tenths of a foot from an iron pipe located at the southwest corner of the property and which had been placed there by Mr. Hillis, that he had copies of surveys made by Mr. Hillis in 1893, 1920, and 1940; that he does not know where the section line ends because he lacks information as to where the government man put the post; that he noted the differences between the magnetic bearing which was south zero degrees fifty-five minutes (0° 55') east and the true bearing. He computed the true bearing from two solar observations and the aver-

age of the two was 0° 5′ east. He said that he ran bearings on the rest of the township on known corners to ascertain what the surveyors in the original survey meant by south. He stated that he was influenced by the field notes and what is left on the ground as mentioned in the field notes.

Charles Rollman, a consulting engineer who testified for respondent, did not make a survey but had examined various exhibits and had walked on the property. His findings as to the location of the section line are identical with those of Mr. Hall and Mr. Grimmer.

The appellants presented an expert witness, James I. Corbett, an engineer and surveyor, who had made a survey at the request of the Ihlers in 1951. Mr. Corbett testified that he began his survey at the section corner of 17, 18, 19, and 20; that he first followed some stakes put in before, and chained out (from government notes) 1,182 feet looking for the meander position and meander post on the shore of the water. He found that he would have to move more to the east, and did so 38.9 feet. He said that he then ran two or three more lines from the section corner until he intersected the stake and then chained along that line 1,182.72 feet and established an iron stake at the high bank; that he then went east along the section line between 20 and 17 to note meander position east of the section corner and ran another course and ended up with a closed survey; that he obtained information with regard to distances from the government notes and that his survey corresponds with those notes. He claimed that the method used by the other surveyors to establish a lost corner is not the regular and recognized method. He said that in making his survey, he did not take into account the evidence of the old fence because the distance of such line did not check back against the government notes. He said that a survey line and the line claimed by the other surveyors are 23.57 feet apart at the north boundary of the Rosen property and 27.52 feet apart at the

south boundary. He said that in ascertaining that the direction was true north he made no allowance for declination; that he made neither a solar nor polar observation; that he did not consult geodetic charts; that he had noticed evidence of a former survey in the area and an old fence line west of the barns; that he did not know what allowance was made for error in 1840. He said that he did not determine the error in adjacent areas in this township. He stated that in making his survey he used the principle of a "double proportionate" method. He declared that in his opinion the difference of result arrived at between Mr. Hall, Mr. Grimmer, and himself in locating the section line was in the method of survey employed.

The testimony of the surveyors clearly indicates that there was no unanimity of opinion between them as to correct survey practice that was to be employed under conditions as here in the ascertainment of the location of the section line. Mr. Corbett looked for lost corners and used the "proportionate method." Mr. Hall and Mr. Grimmer, while considering the notes of the government survey, allowed specially for variation between the magnetic bearing and the true bearing. Mr. Rollman agreed that the method employed by Hall and Grimmer was in conformity with recognized surveying practice. Mr. Corbett testified that instead of using magnetic variations, he ran the line from points—although the known points were not designated by markers.

In the absence of a showing that the method employed by Mr. Corbett was the only one recognized in surveying practice and that his was the only result possible, it was clearly within the province of the court to determine the weight and credibility of the testimony of these witnesses.

Competent evidence was adduced by respondent that the fence line was by common understanding the boundary line. Several witnesses testified that the fence had existed for more than forty years. Mr. Hillis' survey determined that

the section line corresponded with the fence line as did also the surveys of those who testified for respondent. There was competent evidence indicating that the fence was back of the buildings (west thereof) as early as 1910. A witness, Gertrude Briggs, a predecessor in title to appellants, testified that she knew the property since 1916 and purchased it in 1938. She said that she thought that she owned the fence which was west of the buildings and that when she bought the property she did not think she was buying buildings. She stated that when she sold the property to Ihlers she did not purport to sell the garage and barn in question to them. There is testimony indicating that the respondent and her predecessors in title have used and occupied the land in question for more than forty years.

In our opinion this situation is controlled by the rule in *Wollman v. Ruehle* (1898), 100 Wis. 31, 34, 75 N. W. 425:

"Long acquiescence in the line so established, with undisputed possession for such a long period of time, raises a strong presumption that the line so recognized is the true line, and is not overcome by the mere fact that a survey, made long after government monuments have been obliterated or lost, reveals another line."

The trial court's finding with reference to the use of the disputed premises by respondent and her predecessors continuously, exclusively, and openly for more than twenty years in good faith and under claim of right in title is supported by the evidence. The court's finding with regard to the location of the boundary line between the land owned by the respective parties is supported by competent evidence. The weight that shall be given to relevant and competent evidence is for the trier of fact. The question of the credibility of the witnesses was for the trial court in this case. We cannot disturb these findings.

*By the Court.*—Judgment affirmed.