RONDESVEDT, Appellant, v. RUNNING, Respondent.

*March 8—April 12, 1963.*

For the appellant there was a brief and oral argument by *Robert Zum Brunnen* of Spooner.

For the respondent there was a brief and oral argument by *Warren Winton* of Shell Lake.

FAIRCHILD, J.   The point has grown imperceptibly, extending into the water from deposits which were made on and against lots 8 and 9.   It does not abut any dry land owned by defendant.   Plaintiff, as owner of lots 8 and 9, claims the entire point (hereinafter referred to as "alluvion") as having been added, by accretion, to his lots. [1]

Defendant does not challenge the general rule relied on, but advances two theories under which it ought not to be ap-

---

[1] "To these [riparian rights] may be added the right of the riparian owner to accretions formed by slow and imperceptible degrees upon or against his land, . . ." *Boorman v. Sunnuchs* (1877), 42 Wis. 233, 242; *Doemel v. Jantz* (1923), 180 Wis. 225, 231, 193 N. W. 393.

plied to the portion of the alluvion which lies southeasterly of the line (or extension thereof) between lot 7, which she owns, and lot 8. (1) She argues that the parcel in dispute has been deposited upon a portion of the bed of the lagoon which is overflowed land, and owned by her. (2) She claims that because the alluvion now impairs, and eventually will destroy, the access from lot 7 to the deep water, plaintiff's right to appropriate the alluvion stops at the boundary line, extended, between lots 7 and 8.

1. *Title to the land under the lagoon.* Defendant cites authority for the proposition that the owner of submerged land is the owner of dry land which subsequently may be formed thereon.[2]

The present water level is at least 3.5 feet above the level which would exist, subject to seasonal variations, but for the dam. The lagoon is less than 2 feet deep and trees used to grow in the area it now occupies. It seems probable that the bed of the lagoon is privately owned, but overflowed, land rather than state-owned lake bed. The natural shore may have been as far out as the line from the point to the island (considered by the court as the "new shoreline"), although the location of the original shore cannot be determined with any certainty from the record before us. If lot 7, as platted, extends to the natural shore, and thus includes the submerged land under the lagoon, the record does not clearly so show. The parties, however, seem to have assumed that no other person had title to any area between lot 7 and the natural shore, although the lumber company had flowage rights. We proceed upon the same assumption, but conclude that because of the other uncertainties just mentioned, the decision should not be based upon the proposition that the disputed parcel rests on a submerged portion of lot 7.

[2] *St. Louis v. Rutz* (1891), 138 U. S. 226, 247, 11 Sup. Ct. 337, 34 L. Ed. 941; *Sliter v. Carpenter* (1905), 123 Wis. 578, 580, 102 N. W. 27.

**2.** *The apportionment made by the circuit court.* The circuit court drew the inference (which we deem reasonable under the circumstances) that the process of accretion would continue along the sandbar between the point and the island, and considered that the new shoreline runs from the point to the island, along the bar. That line is approximately perpendicular to the boundary between lots 7 and 8, extended, and the court deemed it equitable to apportion the alluvion by extending that boundary.

If the alluvion were contiguous to lot 7 as well as lots 8 and 9, defendant, as owner of lot 7, was entitled to apportionment, even though the accretion may have begun on lot 8 or 9.[3] The method followed by the circuit court, based upon its determination of the course of the new shoreline, was in accord with a rule approved by this court.

"Thus, there was applied, substantially, the rule that, in apportioning an accretion or reliction, the new division lines must be drawn in a straight line, at a right angle to the present shoreline, from the points at which the division lines of coterminous owners intersected the original shoreline." [4]

Although different rules may apply to situations falling into substantially different types, and in any situation a given rule is not to be strictly applied so as to produce an inequitable result because of particular circumstances,[5] we find no reason to differ with the determination of the circuit court that the apportionment it has made is equitable.

---

[3] 56 Am. Jur., Waters, p. 905, sec. 494.

[4] *Jansky v. Two Rivers* (1938), 227 Wis. 228, 240, 278 N. W. 527, referring to *Hathaway v. Milwaukee* (1907), 132 Wis. 249, 111 N. W. 570, 112 N. W. 455.

[5] See 56 Am. Jur., Waters, pp. 904–908, secs. 494–497. *Northern Pine Land Co. v. Bigelow* (1893), 84 Wis. 157, 54 N. W. 496; *Thomas v. Ashland, S. & I. R. L. R. Co.* (1904), 122 Wis. 519, 100 N. W. 993.

The alluvion is not contiguous to the dry portion of lot 7 and plaintiff does not concede that it is contiguous to any submerged portion. The record would not fully support a finding that the alluvion either rests upon or is contiguous to the submerged portion of lot 7, and we therefore assume that it is not. Plaintiff contends that none of the alluvion may be apportioned to defendant as owner of lot 7, because of the lack of contiguity.

Defendant cites authority for the proposition that where accretion begins on the shore of one owner and extends laterally, along and in front of the shore of another owner, cutting off the latter's access to deep water, the right of the first to appropriate the alluvion stops at the extended boundary line of the second.

"The right of accretion to an island in the river cannot be so extended lengthwise of the river as to exclude riparian proprietors above or below such island from access to the river, as such riparian proprietors. *Mulry v. Norton,* 100 N. Y. 424, 436, 437." [6]

"We are also of the opinion that the principles applicable to the apportionment of lands formed by accretion among the owners of contiguous uplands is quite controlling as to the rights of the respective parties in this case. Such owners are entitled to lands made by accretion or reliction in front of their property and contiguous thereto in certain proportions, according to the formation of their respective shorelines. Houck, Rivers, sec. 162; 3 Washburn, Real Prop. 58; Angell, Tidewaters, 171. However such accretions may be commenced or continued, the right of one owner of uplands to follow and appropriate them ceases when the formation passes laterally the line of his coterminous neighbors. 'A littoral proprietor, like a riparian proprietor, has a right to the water frontage belonging by nature to his land, although the only practical advantage of it may consist in the access thereby afforded him to the water for the purposes of using

---

[6] *St. Louis v. Rutz, supra,* p. 250, footnote 2.

the right of navigation. This right is his only and exists by virtue and in respect of his riparian proprietorship.' Gould, Waters, sec. 149; *Buccleuch v. Metropolitan Board of Works*, L. R. 5 H. L. 418." [7]

Some of these cases involved rivers. Where this problem arises in a river in Wisconsin, it may be resolved upon the proposition that alluvion deposited upon the riverbed between the bank and the thread of the stream belongs to the owner of the bank because he owns the riverbed.[8] Although our present problem involves a deposit on a lake bed, we find persuasive the reasoning of the authorities cited, that accretion extending laterally is not to increase the amount of access of one owner to navigable water at the expense of other owners.

The owner of lot 7, before the accretion occurred, had access to the open water of the lake by traversing the shallows in a direct line from any portion of her shore. She may still reach open water but, because of the process of accretion, may not do so by water in a direct line from all parts of her shore. The process is continuing and the impairment of access will be more substantial in the future.

The rule relied upon by plaintiff, that alluvion formed by accretion belongs to the owner of the upland to which it is contiguous, is, in part at least, a recognition of the riparian right of that owner to access to the water. Where the circumstances are such that the full application of that rule in favor of one riparian owner would destroy or substantially impair the riparian right of another owner to access, we think the rule must yield.

In discussing rules of apportionment, this court has said:

[7] *Mulry v. Norton* (1885), 100 N. Y. 424, 436, 3 N. E. 581, 586. See *Waring v. Stinchcomb* (1922), 141 Md. 569, 119 Atl. 336, 32 A. L. R. 453; *Crandall v. Allen* (1893), 118 Mo. 403, 24 S. W. 172; 56 Am. Jur., Waters, p. 896, sec. 480, p. 899, sec. 485.

[8] *Sliter v. Carpenter, supra*, footnote 2.

". . . the dominant rule is that each must have his due proportion of the line bounding navigability and a course of access to it from the shore exclusive of every other owner, and that all rules for apportionment or division are subject to such modification as may be necessary to accomplish substantially this result." [9]

Rules of apportionment embody a recognition of the proposition that lands bordering upon navigable water often derive a great part of their value from that circumstance. [10]

We conclude that defendant's right, as owner of lot 7, to access to the open water of the lake ought to be preserved, so far as possible, by apportioning to her part of the alluvion, as determined by the circuit court.

3. *Rights of owners of other parcels.* We note that other lots front on the lagoon, and their owners may be concerned with means of access to the open water of the lake. They are not parties to this action, and if their rights conflict with those of plaintiff or defendant, such rights are not determined here.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.

---

[9] *Thomas v. Ashland, S. & I. R. L. R. Co., supra,* p. 524, footnote 5.

[10] See Gould, Treatise on the Law of Waters (3d ed.), p. 306, sec. 155.