Marino PERPIGNANI, Plaintiff-Respondent,

v.

Thomas VONASEK, as personal representative of the Estate of Bernt S. Brekke, Deceased, and Helen C. Brekke, Defendants and Third-Party Plaintiffs-Respondents,

David A. PIEPER and Arleen J. Pieper, His wife, Third-Party Defendants-Appellants,

Helen RASMUSSEN, Third-Party Defendant-Co-Appellant,

WASHBURN COUNTY ABSTRACT COMPANY, Third-Party Defendant. †

Court of Appeals

*No. 84–2445. Submitted on briefs October 28, 1985.—*
*Decided February 25, 1986.*
(Also reported in 386 N.W.2d 59.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the appellants there were briefs by *Joe Thrasher* and *Weisel, Thrasher, Doyle & Pelish, Ltd.,* of Rice Lake.

For the co-appellant there was a brief by *Hugh H. Gwin, Thomas A. Dahle* and *Gwin & Gwin* of Hudson.

For the plaintiff-respondent there was a brief by *Edward J. Coe* and *Coe, Dalrymple, Heathman & Arnold, S.C.,* of Rice Lake.

Before Cane, P.J., Dean and LaRocque, JJ.

LaROCQUE, J.   David and Arleen Pieper, Helen Rasmussen, Helen Brekke, and Thomas Vonasek[1] appeal a judgment awarding Marino Perpignani ownership of relicted land[2] and rejecting Brekke's claim of adverse possession under color of title. Although the trial court did not abuse its discretion in its choice of survey methods, we conclude that it failed to apply the appropriate burden of proof and presumption of adversity and erroneously denied Brekke's claim of adverse possession under color of title. We therefore reverse the judgment.

---

[1] Thomas Vonasek is the personal representative of Bernt Brekke's estate. Bernt was Helen Brekke's husband.

[2] Relicted land is land uncovered as a body of water, in this case Shell Lake, gradually recedes. Frank E. Clark, A Treatise on the Law of Surveying and Boundaries § 573 (John Grimes, 4th ed. 1976); *see Jansky,* 227 Wis. at 236, 278 N.W. at 531. Reliction differs from accretion, which is the gradual deposit of material along the bank of a lake or stream that results in the gradual buildup of the bank. Clark, *supra,* at § 567.

At issue in this appeal is ownership of relicted land lying between the present shoreline of Shell Lake and the original meander line[3] of Government Lots 2 and 3. Government Lot 3 is west of Government Lot 2. The Brekkes acquired their land in two conveyances, one from the Piepers in 1960, and the other from Rasmussen in 1972. Line B on Diagram 1 is the line originally thought to be the east line of Government Lot 3, owned by Perpignani, and line D is the east line as established by the trial court.[4] The parcel conveyed by the Piepers lies between lines B and C, and the lot conveyed by Rasmussen lies to the east of line C. As illustrated by the shaded area, almost the entire lot transferred by the Piepers to the Brekkes, and a small portion of the lot transferred by Rasmussen, is relicted land whose ownership is at issue. Both conveyances to Brekke were ostensibly part of Government Lot 2. After the reliction was apportioned by the trial court, it became a part of Government Lot 3.

---

[3] A meander line is a traverse of a body of water for the purpose of determining the size and location of the body of water. A meander line does not establish the actual location of the waterline or boundary of the property. Brown, Boundary Control and Legal Principles, *supra* p. 5, at 355; *see also State v. Thiel,* 82 Wis.2d 276, 283, 262 N.W.2d 522, 527–28 (1978).

[4] Diagram 1 is a portion of Exhibit 16, with additions and deletions for illustrative purposes. *Nosek v. Stryker,* 103 Wis.2d 633, 635, 309 N.W.2d 868, 870 (Ct. App. 1981).

SHELL LAKE

Excerpt from Exhibit 16

DIAGRAM 1

482

After the Brekkes obtained the lot from the Piepers, they placed a mobile home on it and used it as a summer retreat. They maintained the lot by clearing brush and mowing the grass in certain areas. Eventually they built a house and garage on it.

■

The trial court properly apportioned the reliction. Several different rules may apply in Wisconsin for establishing the extension of boundaries between contiguous shoreline properties.[5] *See Jansky v. City of Two Rivers,* 227 Wis. 228, 240, 278 N.W. 527, 532 (1938); *Northern Pine Land Co. v. Bigelow,* 84 Wis. 157, 164, 54 N.W. 496, 498 (1893); *Nosek v. Stryker,* 103 Wis.2d 633, 635–38, 309 N.W.2d 868, 870–72 (Ct. App. 1981). Which method to follow depends on the particular circumstances of a given case. *Rondesvedt v. Running,* 19 Wis.2d 614, 618, 121 N.W.2d 1, 4 (1963). Courts, however, are obliged to avoid inequitable results when apportioning relicted lands. *Id.*

The two applicable choices in this dispute are the straight line method and the pie or cove method. Under the straight line method, advocated by Perpignani, the original property line is extended to the present shoreline. *See Nosek,* 103 Wis.2d at 635, 309 N.W.2d at 870. This method is used where the shoreline approximates a straight line and the property division line meets the shore at a right angle. *Id.; see* Diagram 1, line D. As illustrated, division by this method causes a portion of Brekke's lot, including her house and a corner of her garage, to encroach onto Perpignani's lot.

---

[5] The various cases reveal that these rules apply generally to cases apportioning land along a body of water, whether the specific situation is a reliction, accretion, or extension of boundaries into a lake.

The pie method, on the other hand, first locates the center of a round body of water, or a cove. A line is then projected from that point to a point on the shore where the lot line and the water line at the time of the original government survey meet, much in the same way pie is cut. Curtis M. Brown, Boundary Control and Legal Principles § 10.24(d), at 311 (2d ed. 1962). Under this method, Brekke does not encroach onto Perpignani's property. *See* Diagram 1, line A.

Two surveyors testified at trial. Phillip Lysdahl, who advocates the straight line method, stated that the pie method requires location of the shoreline at the time of the original government survey in the 1850's, which is apparently undeterminable here. Lysdahl also opined that the shoreline directly abutting the disputed property approximates a straight line and that the straight line method could therefore be properly applied. Steven Johnson, on the other hand, disputed many of Lysdahl's claims and advocated the pie method. Johnson, however, admitted that the specific section of shoreline in question resembles a straight line.

We conclude that the trial court did not abuse its discretion by choosing the straight line method. *See State v. Pharr,* 115 Wis.2d 334, 342, 340 N.W.2d 498, 501 (1983). In the absence of a showing that the pie method is the only one recognized in surveying practice and is the only result possible, it is within the province of the trial court to determine the weight and credibility of the testimony of these two expert witnesses and to choose which method to follow. *See Rosen v. DILHR,* 267 Wis. 220, 225, 64 N.W.2d 845, 847 (1954).

Having failed to obtain the land by survey, Brekke next argues that she is entitled to the land because of her adverse possession under color of title. The statutes governing the adverse possession claim are those in existence at the time the claim accrued, secs. 893.06 and 893.07, Stats. (1971).[6] This conclusion is drawn from

[6] Section 893.06, Stats. (1971), provides:

Presumption of adverse holding under conveyance or judgment. Where the occupant or those under whom he claims entered into the possession of any premises under claim of title, exclusive of any other right, founding such claim upon some written instrument, as being a conveyance of the premises in question, or upon the judgment of some competent court, and that there has been a continual occupation and possession of the premises included in such instrument or judgment or of some part of such premises under such claim for 10 years, the premises so included shall be deemed to have been held adversely; except that when the premises so included consist of a tract divided into lots the possession of one lot shall not be deemed the possession of any other lot of the same tract.

Section 893.07, Stats. (1971), provides:

Adverse possession defined. For the purpose of constituting an adverse possession by any person claiming a title founded upon some written instrument or some judgment land shall be deemed to have been possessed and occupied in the following cases:

(1)     Where it has been usually cultivated or improved;

(2)     Where it has been protected by a substantial inclosure;

(3)     Where, although not inclosed, it has been used for the supply of fuel or of fencing timber for the purpose of husbandry or for the ordinary use of the occupancy;

(4)     Where a known farm or single lot has been partly improved the portion of such farm or lot that may have been left not cleared or not inclosed, according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved or cultivated.

the language of sec. 990.07, Stats.,[7] which establishes the effective dates of statutes of limitation. Adverse possession statutes are statutes of limitations. *See* 3 Am. Jur. 2d *Adverse Possession* § 2 (1962). This determination is important because later amendments require a filing of the deed within thirty days, something Brekke failed to do. *See* sec. 893.26, Stats (1979).

The trial court erroneously declared an absence of color of title because the Piepers' deed to Brekke begins with the description "That part of Government Lot Two (2)," even though the rest of the description accurately plats the land Brekke has occupied since 1960. Because the trial court divided the relicted land by the straight line method, the majority of that land now falls in Lot 3. The trial court reasoned that Brekke's deed therefore does not describe the land in question and that there is no color of title.

This analysis is faulty.[8] Color of title is that which

---

[7] Section 990.06, Stats., provides:

**Repeal or change of law limiting time for bringing actions.** In any case when a limitation or period of time prescribed in any act which shall be repealed for the acquiring of any right, or barring of any remedy, or for any other purpose shall have begun to run before such repeal and the repealing act shall provide any limitation or period of time for such purpose, such latter limitation or period shall apply only to such rights or remedies as shall accrue subsequently to the time when the repealing acts shall take effect, and the act repealed shall be held to continue in force and be operative to determine all such limitations and periods of time which shall have previously begun to run unless such repealing act shall otherwise expressly provide.

[8] The color of title analysis applies to Rasmussen's deed to Brekke. Rasmussen obtained her lot in 1960. Though Brekke ob-

gives the semblance or appearance of title; however, by reason of defect not appearing on the deed at the time of conveyance, the writing does not in fact amount to true title. 3 Am. Jur. 2d *Adverse Possession* § 96 (1962). To constitute color of title, Brekke must occupy and possess the premises described in the deed. *See New v. Stock,* 49 Wis.2d 469, 478, 182 N.W.2d 276, 280 (1971). It is undisputed that the deed accurately, by metes and bounds, describes the lot that Brekke has occupied since 1960. The reference in the deed to Lot 2 does not poison the otherwise accurate description. The fact that Brekke's lot was only later judicially decreed to be part of Government Lot 3, and not Lot 2, is the defect causing the deed to pass only color of title and not actual title.

We turn now to the trial court's determination that the property was not held in an open, notorious, and hostile manner. Where, as here, a claim of adverse possession is made under color of title, it is presumed that a continual ten-year occupation and possession of the premises is adverse. *Polanski v. Town of Eagle Point,* 30 Wis.2d 507, 511–12, 141 N.W.2d 281, 283 (1966). Conversely, absent color of title, the rule is that all reasonable presumptions must be made in favor of the true owner against an adverse claimant. *Allie v. Russo,* 88 Wis.2d 334, 343, 276 N.W.2d 730, 735 (1979). In such a case, the burden of proof is on the adverse

tained Rasmussen's lot in 1972, and Perpignani filed this action in 1980, Brekke still satisfies the 10-year statutory period because he can tack his eight years of possession to Rasmussen's 12 years. *See Mortenson v. Murphy,* 153 Wis. 389, 393, 141 N.W. 273, 274 (1913); § 893.06, Stats. Similar to the Pieper deed, the description is accurate but for the reference to "Government Lot Two (2)."

claimant, who must show by clear and convincing evidence that the physical possession was "hostile, open and notorious, exclusive and continuous for the statutory period." *Id.* Because Brekke had color of title, the rebuttal presumptions and burdens normally favorable to Perpignani, the true owner, therefore shift to favor Brekke, the adverse claimant. *See Illinois Steel Co. v. Budzisz,* 139 Wis. 281, 299–300, 119 N.W. 935, 938–39 (1909). The question of Brekke's occupation and possession of the disputed property must therefore be viewed most favorably to Brekke. It is also apparent that Perpignani had the burden to present clear and convincing evidence that the Brekkes' occupation did not fulfill the conditions of sec. 893.07, Stats. (1971). A review of the trial court's memorandum decision convinces us that it did not consider this shift in the burden of proof or rebuttable presumptions.

The applicable statutory provisions in this case are whether the land in question "has been usually cultivated or improved" by Brekke and whether the land "has been used for the ordinary use of the occupant." Section 893.07(1) and (3), Stats. (1971). "Usually improved" means to put to the exclusive use of the adverse claimant as the true owner might use such land in the usual course of events. *Illinois Steel Co. v. Bilot,* 109 Wis. 418, 84 N.W. 855, *reh'g denied,* 109 Wis. 430, 441, 85 N.W. 402, 406 (1901). Common law factors are also relevant in determining whether the possession is sufficiently adverse. *Pierz v. Gorski,* 88 Wis.2d 131, 136–37, 276 N.W.2d 352, 355 (Ct. App. 1979).

The trial court's finding that the Brekkes did not hold the land in an open, notorious, and hostile manner is clearly erroneous. Section 805.17(2), Stats. The Brekkes presented evidence of a number of acts to show oc-

cupation and possession of the contested property consistent with improving the lot or using it in the ordinary course of the occupant. When the Brekkes bought the lot in 1960, it was described as "pretty much wild land." They immediately built a driveway and, in 1961, placed a mobile home on the lot that remained there until approximately 1980, when a house and garage replaced it. Bernt Brekke also cleared brush along the front of the property and along the lakeshore and "then kept the part of the yard mowed" over to Perpignani's boundary.

Perpignani's testimony partially supports the Brekkes' claim. He stated that he observed the mobile home on the property and knew that the Brekkes were his neighbors. He also agreed that the Brekkes "maintain[ed] their yard." Finally, Perpignani acknowledged that he did not maintain, occupy, mow, nor improve land considered to be the Brekkes' property.

The Brekkes' acts since 1960, considered together, are sufficiently open, notorious, hostile, exclusive, and continuous to establish adverse possession under color of title. The acts "would indicate to any stranger that . . . [the lot] was usually being used as an owner would use such land in that lake resort area and thus proclaimed he asserted exclusive ownership." *Burkhardt v. Smith,* 17 Wis.2d 132, 137, 115 N.W.2d 540, 543 (1962). That the Brekkes' possession was open, hostile, and notorious was strengthened by Perpignani's admissions. Furthermore, the possession was clearly hostile because the Brekkes claimed exclusive right to the lot, and their possession of it prevented Perpignani from assuming possession. *See id.* at 139–40, 115 N.W.2d at 544. In fact, Perpignani did not cross what

was thought to be the Brekkes' boundary line. Our review of the trial court's memorandum decision and findings of fact and conclusions of law reveals that the trial court failed to consider much of Bernt Brekke's testimony, which is supported or undisputed by Perpignani. The trial court also seemed to imply that the entire lot had to be cleared or possessed so as not to be "wild," an argument that was rejected long ago. *Id.* at 138, 115 N.W.2d at 543.

The question of adverse possession is a mixed question of fact and law that requires findings as to what happened and a conclusion as to the legal significance of those events. The trial court's failure to recognize the Brekkes' color of title, failure to allocate the burden of proof to Perpignani, and its clearly erroneous findings as to adverse possession resulted in an erroneous conclusion of law rejecting the Brekkes' claim of adverse possession under color of title. We therefore reverse the judgment and remand for the purpose of granting Helen Brekke title by adverse possession to the land bounded on the east by the lot line established by the trial court's reliction apportionment, Diagram 1, line D, on the north by Shell Lake, and on the west and south as described in the Piepers' deed.

*By the Court.*—Judgment reversed and cause remanded with directions.