Raymond L. HARWICK and Betty L. Harwick, Plaintiffs-Respondents,

v.

Robert F. BLACK and K. Lenore Black, Defendants-Appellants.

Court of Appeals

*No. 97–1108. Submitted on briefs November 10, 1997.—Decided March 12, 1998.*

(Also reported in 580 N.W.2d 354.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *William K. McDaniel* of *Johnson, Kranz and McDaniel* of Darlington.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Sheila Stuart Kelley* of *Kopp, McKichan, Geyer and Skemp* of Platteville.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

DYKMAN, P.J.   Robert and Lenore Black appeal from a judgment quieting title to land located in the City of Shullsburg. The land was the subject of a property dispute between the Blacks and Raymond and Betty Harwick. The circuit court declared that the legal title to a portion of the disputed land was to remain with the Harwicks, the land's record owners. The court quieted title to the remainder of the disputed land in the Blacks, concluding that the Blacks had adversely possessed this portion. The court did not quiet title to the entire parcel in the Blacks because it concluded that the Blacks did not adversely possess the entire parcel for the statutory period of twenty years prior to the filing of this action.

The Blacks argue that the trial court erred in looking strictly to the twenty-year period immediately preceding the filing of this action. We agree with the Blacks that the twenty-year period of adverse possession does not need to occur immediately preceding the filing of a court action to meet the statutory require-

ments. We therefore reverse the judgment and remand with directions for the trial court to determine whether the Blacks or their predecessors in title adversely possessed the disputed parcel, or any portion thereof, for a twenty-year period, and for the trial court to quiet title to the disputed land accordingly.

## BACKGROUND

The Blacks and Harwicks own adjoining land in the City of Shullsburg. In 1995, the Harwicks purchased two lots adjacent to the Blacks' lot. Lot 1 abuts the southern border of the Blacks' lot, and Lot 3 abuts the western border of the Blacks' lot. *See* attached exhibit. The Harwicks purchased Lot 3 with the knowledge that the Blacks' garage was built upon the land that the Harwicks purchased.

The Harwicks intended to use the land west of the garage as a driveway. The Blacks originally acquiesced, but later notified the Harwicks that they would not allow them to drive through that area. In the fall of 1995, Raymond Harwick installed a fence blocking the Blacks' access to the land west of the garage. Robert Black took down this fence and installed a fence of his own.

The Harwicks brought suit against the Blacks. The Harwicks alleged that the Blacks, by their predecessors in interest, have caused a garage to be placed upon the Harwicks' property. They further alleged that the Blacks have allowed their tenants to park vehicles and place other items upon the Harwicks' property. The Harwicks requested that the court declare the interests of the parties, determine the property line between the properties, restrain the Blacks' encroachment on the disputed property, and award money damages.

In their answer, the Blacks denied a majority of the allegations. In addition, as an affirmative defense and counterclaim, the Blacks alleged that for more than sixty years preceding the commencement of the Harwicks' action, they and their predecessors in title have been in actual, continued occupation and possession of the disputed land, adverse to and exclusive of every other right, title or interest. The Blacks claimed that they and their predecessors in title have maintained the property and its improvements, including the portion of the property claimed by the Harwicks. Accordingly, the Blacks argued that the Harwicks were barred from maintaining this action and that the court should declare the Blacks as the owners of the disputed property by reason of adverse possession.

The Harwicks conceded that the Blacks had adversely possessed the land on which the garage was built and the land directly east of the garage. However, the Harwicks argued that the Blacks did not adversely possess disputed land which extended approximately twelve feet to the west of the garage and approximately fifteen feet to the south of the garage.

At trial, it was established that the Blacks obtained their real estate in 1985 when it was gifted to them by Izeta Black, Robert Black's mother. Robert's parents had purchased the property in 1955 from the estate of Phoebe Trestrail. The parcel was acquired by Richard Trestrail, Phoebe's husband, in 1914.

The Harwicks obtained Lots 1 and 3 from the estate of Leta Thompson in 1995. These two lots are adjacent to Lot 2, which the Harwicks purchased in 1990 from Eileen Pluemer. *See* attached exhibit. The Harwicks' residence is built upon Lot 2. Leta Thompson acquired the disputed property in 1977.

At trial, Leone Haffele, a neighbor of the Blacks and Harwicks, testified that the garage has been at its present location since at least 1923. She testified that Richard Trestrail mowed grass in the area west and south of the garage. She also testified that the Trestrails maintained flowers alongside the garage and to the side of a lilac bush growing south of the garage, near the southern boundary of the disputed property. Haffele further testified that Izeta Black continued to maintain flowers around the garage after the property was acquired from the Trestrails.

Clara Kaempfer, who has lived in the vicinity since 1949, testified that Phoebe Trestrail and Robert Black's parents maintained the land west of the garage. Phoebe Trestrail and Izeta Black planted flowers around the garage and to the east of the lilac bush.

Robert Black testified that he helped his mother maintain the property after his father's death in 1959. He testified that he mowed grass ten to twelve feet west of the garage and south of the garage to the flower garden, which ran on a line along the southern boundary even with the lilac bush. Izeta Black's granddaughter testified that her grandfather parked a car to the west of the garage and that her grandmother maintained a vegetable garden southwest of the garage during the mid–1970s. The Blacks' son, Timothy, lived on the property from 1983 to 1984, and then the property was rented to Deb Patrow.

Timothy Black testified that he mowed the grass to the west and south of the garage and that he parked his vehicle on the west side of the garage. Deb Patrow testified that she has lived in the Blacks' house for twelve years. Patrow mowed grass ten to twelve feet to the west of the garage and mowed south of the garage

696

to the lilac bush. She also had a garden south of the garage and parked a camper to the west of the garage.

Eileen Pluemer testified that she lived in the residence on Lot 2 from 1979 to 1990. She testified that, with Leta Thompson's permission, she occasionally drove through the area west of the garage to get to her house. She testified that the Blacks occasionally parked a vehicle or boat on the side of the garage, but otherwise did not occupy the property around the garage. Pluemer testified that Leta Thompson had school kids mow the area around the garage for her. Pluemer had also seen the Blacks mow a lawn-mower width strip along the west side of the garage.

Kevin Harwick, Raymond and Betty Harwick's son, testified that in 1992, he started cutting the grass on Lots 1 and 3 for Leta Thompson. He cut the grass on the land west of the garage and on the disputed land south of the garage. Since 1990, he and his friends have played football, baseball and softball on Lot 3, using the garage as a backstop. Betty Harwick testified that Patrow parked a camper to the west of the garage only three or four times since 1990. Raymond Harwick testified that the water and sewer service for Lots 1 and 2 ran through the disputed property.

The trial court concluded that the Blacks had failed to establish their adverse possession claim to the land west and south of the garage. The court noted that Leta Thompson had hired boys, including the Harwicks' son, to mow the area south and west of the garage. The Harwicks and their predecessors in title paid real estate taxes on the property. And Eileen Pluemer did not see a great deal of grass mowing or car parking on the property next to the garage during the time she resided on Lot 2. According to the trial court, the Blacks did not demonstrate their hostile intent to

697

possess the property until 1995, when Robert Black tore down the Harwicks' fence and installed a fence of his own. In addition, the Blacks did not establish continuity of possession because Leta Thompson and her successors in interest also mowed the area around the garage. The court concluded:

> Because the actions of the Blacks asserting an adverse possession claim to the property west and south of the garage did not rise to the level of hostile, open, notorious, exclusive, and continuous for the statutory period of 20 years prior to this action, there was never notice to Leta Thompson or her successors in title of any adverse claim to this property by the Blacks until the 1995 fence incident.

The Blacks appeal.

## DISCUSSION

The Blacks made their claim for adverse possession under § 893.25, STATS., which states:

> (1) An action for the recovery or the possession of real estate and a defense or counterclaim based on title to real estate are barred by uninterrupted adverse possession of 20 years, except as provided by s. 893.14 and 893.29. A person who, in connection with his or her predecessors in interest, is in uninterrupted adverse possession of real estate for 20 years, except as provided by s. 893.29, may commence an action to establish title under ch. 841.
> (2) Real estate is possessed adversely under this section:
> (a) Only if the person possessing it, in connection with his or her predecessors in interest, is in actual continued occupation under claim of title, exclusive of any other right; and

698

(b)  Only to the extent that it is actually occupied and:
   1.  Protected by a substantial enclosure; or
   2.  Usually cultivated or improved.

■

The burden of proof is on the party asserting the claim of adverse possession. *Allie v. Russo*, 88 Wis. 2d 334, 343, 276 N.W.2d 730, 735 (1979). The person claiming adverse possession must show that the disputed property was used for the requisite period of time in an open, notorious, visible, exclusive, hostile and continuous manner that would apprise a reasonably diligent landowner and the public that the possessor claimed the land as his or her own. *See Pierz v. Gorski*, 88 Wis. 2d 131, 137, 276 N.W.2d 352, 355 (Ct. App. 1979).

■

The Blacks argue that the trial court erred in focusing on the twenty years immediately preceding the filing of the lawsuit in adjudicating their adverse possession claim. They argue that adverse possession of the disputed land for an earlier twenty-year time period is sufficient. We conclude that under *Herzog v. Bujniewicz*, 32 Wis. 2d 26, 145 N.W.2d 124 (1966), the twenty-year period of adverse possession does not need to occur immediately preceding the filing of a court action.

In *Herzog*, the plaintiff owned residential property adjacent to the defendant's property. *Id.* at 29, 145 N.W.2d at 125–26. From 1912 until 1942 and possibly 1947 or 1948, a fence extended from the front to the rear of the plaintiff's lot. *Id.* at 32, 145 N.W.2d at 127–28. This fence was on the defendant's land, eighteen inches east of the plaintiff's record lot line. *Id.* at 32, 145 N.W.2d at 127. After the fence had disap-

peared, the plaintiff continued to use a part of the disputed land for a driveway. *Id.* at 33, 145 N.W.2d at 128. The driveway, however, did not cover the entire eighteen-inch strip. *Id.*

The defendant did not make a claim to the disputed strip until 1964. *Id.* The supreme court concluded that the existence of the driveway on the disputed land, and the plaintiff's use of the driveway and removal of weeds from the driveway, were insufficient to prove that the disputed property was used, cultivated or improved exclusively for the plaintiff's benefit. *Id.* at 30, 145 N.W.2d at 126. The court also concluded that the nature of the plaintiff's use was insufficient to give the public and the land's true owner notice of the plaintiff's exclusive dominion over the land. *Id.* Therefore, the existence of the driveway was not sufficient to establish title in the plaintiff by adverse possession. *Id.*

■

Although the fence had not existed for at least sixteen years, the supreme court used the prior existence of the fence to establish the plaintiff's adverse possession claim and directed the trial court to quiet title to the eighteen-inch strip of land in the plaintiff. *Id.* at 33–34, 145 N.W.2d at 128. The court reasoned:

> While the concrete driveway does not cover the full 18-inch strip, there is no requirement that it must do so in order to retain the title previously acquired to the strip by adverse possession. Once title is secured by adverse possession the possessor need not keep the flag of hostility waving forever. The owner of land whether by deed or adverse possession has a legal title and is presumed to be in possession thereof and the occupation of such land by another person is deemed to be under and in

subordination to such legal title unless the land is possessed adversely for the necessary statutory period. . . .

. . . .

Since there is no issue of fact involving the existence of the old fence and its location, or of the exclusive use of the land for the required statutory time of twenty years, we must hold as a matter of law the plaintiff's predecessor in title acquired title by adverse possession to the 18-inch strip along the western boundary line of the defendant's record description to his land.

*Id.* at 33–34, 145 N.W.2d at 128. Under *Herzog*, adverse possession for any twenty-year time period is sufficient to establish title in the adverse possessor.

█

*Marky Inv., Inc. v. Arnezeder*, 15 Wis. 2d 74, 112 N.W.2d 211 (1961), further supports our conclusion. In *Marky*, the court stated that "adverse possession of the subject real estate for the limitation period extinguishes the title of the original owner and vests title in the adverse possessor." *Id.* at 80, 112 N.W.2d at 215. Thus, if the Blacks or their predecessors in interest adversely possessed the disputed land for a twenty-year period, title to the disputed land would have vested in them at the close of the limitation period, and the title of the original owner of the disputed land would have been extinguished.[1]

---

[1] Our conclusion is consistent with 2 C.J.S. *Adverse Possession* § 205 (1972), which states:

Generally, in order to ripen into absolute title, the period of adverse possession need not have been the period next preceding the suit, for if title is perfected by adverse possession at any time prior thereto it is sufficient, however remote from the present time it may have ended, unless, of course, subsequent to its vesting it has been divested.

701

The Harwicks rely on the language of § 893.25, STATS., to support their argument that the twenty-year period of adverse possession must immediately precede the filing of the action. This section provides that real estate is adversely possessed "[o]nly if the person possessing it, in connection with his or her predecessors in interest, is in actual continued occupation under claim of title, exclusive of any other right." Section 893.25(2)(a). The Harwicks argue that, under the plain language of the statute, one claiming adverse possession must, at the time of filing, be in possession of the disputed property.

We disagree. We have no reason to believe that the legislature intended § 893.25, STATS., to change the law of adverse possession. The 1979 Judicial Council Committee's Note to § 893.25 states: "This provision collects in one section all material relating to 20-year adverse possession, *without change in substance*. Previous ss. 893.08 and 893.09, together with part of previous s. 893.10, are integrated here. . . . This section covers the substance of previous s. 893.02, also deleted." (Emphasis added.)

The adverse possession statutes in effect when *Herzog* was decided are substantially equivalent to the 1977 adverse possession statutes that are collected, without change in substance, in § 893.25, STATS. Therefore, we believe that the law of *Herzog* survived the enactment of § 893.25. We conclude that the twenty-year period of adverse possession required by § 893.25 does not need to be the twenty years immediately preceding the filing of a court action.

The trial court concluded only that the Blacks and their predecessors in title did not adversely possess the

disputed parcel for the twenty years prior to the commencement of the Harwicks' lawsuit. It did not make any findings as to the extent to which the Blacks' predecessors in title occupied the disputed property, nor did it determine whether the Blacks' predecessors in title had adversely possessed any portion of the disputed land for a twenty-year period.

The questions of whether the adverse claimant's possession of the disputed land was open, continuous, notorious, hostile, and exclusive are questions of fact. *See Perpignani v. Vonasek*, 129 Wis. 2d 478, 488, 386 N.W.2d 59, 65 (Ct. App. 1986), *rev'd in part on other grounds*, 139 Wis. 2d 695, 408 N.W.2d 1 (1987); *Allie v. Russo*, 88 Wis. 2d 334, 348, 276 N.W.2d 730, 737 (1979); *Northwoods Dev. Corp. v. Klement*, 24 Wis. 2d 387, 394, 129 N.W.2d 121, 124 (1964). The court of appeals is not a fact-finding court. *See Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 (1980). Accordingly, we reverse the judgment and remand with directions that the trial court determine whether the Blacks or their predecessors in title adversely possessed the disputed parcel, or any portion thereof, for any twenty-year period. We further direct the trial court to quiet title to the disputed land accordingly.

*By the Court.*—Judgment reversed and cause remanded with directions.